Michael **SKILLO** and Linda S. Skillo, Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 05–494 T.

United States Court of Federal Claims.

Nov. 30, 2005.

---

Michael Skillo and Linda S. Skillo, Grand Junction, CO, pro se.

Benjamin C. King, Jr., with whom were Eileen J. O'Connor, Assistant Attorney Gen-

eral, Mildred L. Seidman, Chief, Court of Federal Claims Section, Tax Division, and David Gustafson, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, DC, for defendant.

### OPINION AND ORDER

HEWITT, Judge.

Before the court are plaintiffs' Complaint (Compl.), Defendant's Motion to Dismiss (Def.'s Mot. or Motion), plaintiffs' Response to Defendant's Motion to Dismiss (Pl.'s Resp. or Response), and Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Dismiss (Def.'s Reply or Reply). Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), defendant moves to dismiss the claims in plaintiffs' Complaint "because this Court lacks jurisdiction to consider those claims." Def.'s Mot. at 1. For the following reasons, defendant's Motion is GRANTED.

### I. Background

#### A. Notice of Deficiency

Plaintiffs received a Notice of Deficiency from the United States Department of the Treasury, Internal Revenue Service (IRS) on January 26, 2005.[1] Compl. Exhibit (Ex.) U (Notice of Deficiency). The Notice of Deficiency was for the tax year ending December 31, 2001, and states a deficiency of $7,280.00 for that year. *Id.* at 4.[2] The Notice of Deficiency also states penalties assessed in the amount of $1,647.20, and interest assessed in the amount of $1,254.83. *Id.* The total amount due on the Notice of Deficiency is $10,182.03. *Id.* In June of 2004, before the Notice of Deficiency was issued, plaintiffs sent to the IRS a check in the amount of $3,950 for "2000 and 2001[t]axes." *See* Compl. Ex. T (Enclosure Letter with Payment to the IRS) at 2. The Notice of Deficiency states that IRS "received [plaintiffs'] payment of $3,950.00 ..., which will be applied to [plaintiffs'] tax, penalty[,] and interest when assessed for tax year 2001." Compl. Ex. U (Notice of Deficiency) at 4; *see also* Def.'s Mot. at 2–3 and Ex. 1 (Certificate of Assessments, Payments, and Other Specified Matters) at 2 (listing an "Advance Payment of Deficiency" of $3,950.00). The Notice of Deficiency goes on to provide an "Explanation of Adjustments" for the taxable year ending December 31, 2001. Compl. Ex. U (Notice of Deficiency) at 5–11. Finally, the Notice of Deficiency notes that if plaintiffs "want to contest this determination in court before making any payment, [plaintiffs] have 90 days from the date of this letter ... to file a petition with the United States Tax Court for a redetermination of the deficiency." *Id.* at 1.[3] Plaintiffs have not indicated that they filed such a petition.[4]

---

1. "A Notice of Deficiency is issued if the IRS Commissioner, or another IRS official, finds a deficiency in a federal taxpayer's income, estate, gift, or certain miscellaneous excise taxes. The notice is not a tax assessment, but a proposed deficiency." *Hunsaker v. United States,* 66 Fed. Cl. 129, 133 n. 4 (2005) (citing 26 U.S.C. 6211(a) (2000))..

2. Where no page numbers exist in the parties' exhibits, which are not Bates-stamped, the court cites to documents within the exhibits using their ordinal position as their page numbers.

3. A taxpayer has 90 days (or 150 days if the taxpayer resides outside the United States) from the date on which a Notice of Deficiency is mailed to agree to the proposed deficiency or file a petition for redetermination in the United States Tax Court. *See* 26 U.S.C. § 6213(a).

4. Nor can plaintiffs now file a petition for redetermination with the Tax Court. As indicated in the Notice of Deficiency, the Tax Court "cannot

consider [plaintiffs'] case if the petition is filed late.... The time [plaintiffs'] have to file a petition with the [Tax C]ourt is set by law and cannot be extended or suspended." Compl. Ex. U (Notice of Deficiency) at 2; *see also* 26 U.S.C. § 6213(a) ("The Tax Court shall have no jurisdiction to enjoin any action or proceeding or order any refund under this subsection unless a timely petition for a redetermination of the deficiency has been filed ...."). This is so even though plaintiffs filed in this court within the required 90–day period, as the requirement is jurisdictional and the Tax Court has no authority equitably to toll the time limitation. *See DiViaio v. Comm'r,* 539 F.2d 231, 234 (D.C.Cir.1976) ("[I]t has been decided time and time again that the [90–day] statutory period is jurisdictional, and the duty to dismiss on failure to comply is mandatory.") (quotation and citation omitted); *Comm'r v. McCoy,* 484 U.S. 3, 7, 108 S.Ct. 217, 98 L.Ed.2d 2 (1987) (holding that the United States Tax Court is "a court of limited jurisdiction and lacks general equitable powers"); *Healy*

## B. Plaintiffs' Claims

Instead, plaintiffs, proceeding pro se, filed a complaint in the United States Court of Federal Claims on April 25, 2005,[5] setting forth four claims against defendant.[6] *See* Compl. at 1. Plaintiffs' first claim summarily alleges that "[d]efendant[ ] [v]iolated the plaintiffs['] due process," Compl. at 1, presumably by improperly issuing the Notice of Deficiency, *see id.* Ex. 1 (Sworn Notice in Affidavit Form) at 5 ("Based on this Notice of Deficiency, the Defendants have violated Plaintiffs['] constitutional right ....”). Plaintiffs' second claim states that "[d]efendant[ ] illegally disallowed plaintiffs['] deductions." Compl. at 1. This claim appears to refer to a "loss of $31,894.00 ... taken in the year 2000, ... which defendant[ ][is] disallowing." *Id.* Ex. 1 (Sworn Notice in Affidavit Form) at 3.

Plaintiffs' third claim avers that "[d]efendant[ ] ha[s] damaged plaintiffs in the amount of $1,970,558.00." Compl. at 1. Although it is unclear from the Complaint, this claim appears to refer to lost "potential income [to be] derived from this venture," the

"venture" being a partnership into which plaintiffs entered on December 17, 1999. *Id.* Ex. 1 (Sworn Notice in Affidavit Form) at 2. Mr. Skillo's affidavit states that a partner in the partnership was indicted, "thereby incapacitating his role as the partner of this joint venture" and "caus[ing] a] loss of $1,970,558.00." *Id.*[7] Plaintiffs' fourth and final claim seeks "[p]unitive damages based on fraud in the amount of $1,000,000.00." Compl. at 1. This claim appears to refer to alleged actions by defendant through "U.S. Attorney[ ] Corey Smith, [who] knowingly put forth a fraudulent deposition into the Costa Rican court regarding Keith Anderson['s] involvement in money laundering with regard to drug trafficking .... This fraudulent claim by Corey Smith was instrumental in removing the principal managers of the Costa Rican accounts holding the funds that were to be used for the funding of the joint venture project." *Id.* Ex. 1 (Sworn Notice in Affidavit Form) at 3 (citing Compl. Ex. I (Affidavit in Support of Joint Request for Extradition of Keith E. Anderson, or for Deportation of Keith E. Anderson)).[8]

*v. Comm'r,* 351 F.2d 602, 603 (9th Cir.1965) ("The requirement of filing the petition with the Tax Court within 90 days after the ... notice of deficiency is mailed to the correct address of the taxpayer is jurisdictional, and no matter how allegedly inequitable the situation, there is no authority to relieve the taxpayer from the clear jurisdictional requirements of the law.") (internal citations and quotations omitted). As explained below, *see infra,* Part II.D, however, plaintiffs may seek redress in this court if they have fully paid the disputed tax and claimed a refund therefor.

5.  The court notes that plaintiffs' Complaint was filed exactly 89 days after they received the Notice of Deficiency, within the 90–day time period applicable to plaintiffs under 26 U.S.C. § 6213(a) if they had filed in the Tax Court.

6.  Plaintiffs' Complaint lists as "defendants" "The United States Department of the Treasury Internal Revenue Service" in Denver, Colorado, "The United States Department of the Treasury Internal Revenue Service" in Salt Lake City, Utah, and "The United States Department of the Justice" in Washington, DC. Compl. at 1. The general jurisdictional statute of the United States Court of Federal Claims, the Tucker Act, provides that the court "shall have jurisdiction to render judgment upon any claim against the United States," 28 U.S.C. § 1491(a)(1) (2000), not upon claims against its individual agents or administrative agencies, *see Nat'l Cored Forgings*

*Co. v. United States,* 126 Ct.Cl. 250, 115 F.Supp. 469, 475 (1953) ("Where ... the ... contracting agency acts as agent for the United States, as plaintiffs here allege, the action ... should be brought against the United States in the Court of Claims ....”); *Brazos Elec. Power Coop., Inc. v. United States,* 52 Fed.Cl. 121, 133 (2002) ("In the Court of Federal Claims—under its general jurisdictional statute (the Tucker Act, 28 U.S.C. 1491) and other jurisdictional statutes—the defendant is always the 'United States.' ”); *Turner v. United States,* 23 Cl.Ct. 447, 457 (1991) ("Only the United States can be the defendant here."). Nevertheless, because plaintiffs are appearing pro se, their pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Thus, construing plaintiffs' Complaint "liberally," *McSheffrey v. United States,* 58 Fed.Cl. 21, 25 (2003), the court treats plaintiffs' complaint as if pleaded against the United States as required by the Tucker Act.

7.  Plaintiffs provide no other evidence of how they arrived at this amount, nor do they provide evidence of the alleged indictment. *See* Compl. Ex. 1 (Sworn Notice in Affidavit Form) at 2–4.

8.  Plaintiffs have provided no further evidence of the effect of this allegedly fraudulent affidavit on the matter regarding Keith E. Anderson, *see* Compl. Ex. I (Affidavit in Support of Joint Re-

Plaintiffs further articulated the alleged jurisdictional bases for their claims in their Response. First, plaintiffs explain that defendant breached a contract allegedly entered into when plaintiffs filed their Form 1040 joint tax return in 2001. *See* Pls.' Resp. ¶ 4 ("[T]he IRS['s] demands for plaintiff[s'] money (property) is a demand for a contract with the plaintiff[s], which plaintiff[s] supplied to the IRS in good faith said contract, the 1040 form . . . ."). In addition, plaintiffs assert that "[t]he issue here is a taking of property." *Id.* ¶ 13. Thus, by alleging improper IRS collection activities, plaintiffs contend that their "[C]omplaint does in fact, plead . . . a clear breach of plaintiff[s'] due process of rights as defined within the just compensation clause of the Fifth Amendment to the Constitution, invoking the jurisdiction of the United States Court of Federal Claims under the Tucker Act." *Id.* ¶ 8.

## II. Discussion

### A. Standard of Review

RCFC 12(b)(1) governs the dismissal of a claim for lack of subject matter jurisdiction. In ruling on a RCFC 12(b)(1) motion to dismiss, the court is generally "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff[s'] favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). However, plaintiffs, as the non-moving party, bear the burden of establishing jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction was put in question it [is] incumbent upon [plaintiffs] to come forward with evidence establishing the court's jurisdiction."). The court may not grant a motion to dismiss unless "it appears beyond doubt that . . . plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### B. Jurisdiction of the United States Court of Federal Claims

The United States Court of Federal Claims is a court of "limited jurisdiction." *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). The Tucker Act, 28 U.S.C. § 1491, confers upon this court jurisdiction over certain claims against the United States; however, the Tucker Act does not create a substantive right enforceable against the sovereign. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Khan v. United States,* 201 F.3d 1375, 1377 (Fed.Cir.2000). Rather, a plaintiff's claim must be grounded in a contract or arise pursuant to a money-mandating statute, regulation, or provision of the Constitution, such as the Takings Clause of the Fifth Amendment. *See* 28 U.S.C. § 1491; *Testan,* 424 U.S. at 397–98, 96 S.Ct. 948.

■ The general rule is that this court has jurisdiction over a case if a claimant makes a non-frivolous allegation that he is "entitled to money from the United States because a statute or a regulation grants him that right," or because a contract or constitutional provision creates an equivalent right. *Ralston Steel Corp. v. United States,* 169 Ct.Cl. 119, 340 F.2d 663, 667 (1965); *see also Stephenson v. United States,* 58 Fed.Cl. 186, 192 (2003) ("[W]e are not empowered by Congress to recognize '*every* claim [against the United States] involving or invoking the Constitution, a federal statute, or a regulation.' Rather, [we] may only hear claims seeking primarily *monetary relief* against the United States government based upon 'money-mandating' provisions of the Constitution, acts of Congress, or executive regulations, to which the plaintiff alleges a specific entitlement.") (quotations omitted). As the United States Court of Appeals for the Federal Circuit recently explained:

> When a complaint is filed alleging a Tucker Act claim . . . the trial court at the outset shall determine . . . whether the

---

quest for Extradition of Keith E. Anderson, or for Deportation of Keith E. Anderson), nor have they

explained who Keith E. Anderson is or his connection, if any, to this case.

Constitutional provision, statute, or regulation is one that is money-mandating.

If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course. For purposes of the case before the trial court, the determination that the source is money-mandating shall be determinative both as to the question of the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action.

*Fisher v. United States,* 402 F.3d 1167, 1173 (Fed.Cir.2005).

The United States Court of Federal Claims "may not entertain claims outside this specific jurisdictional authority." *Adams v. United States,* 20 Cl.Ct. 132, 135 (1990); *see also Taylor v. United States,* 49 Fed.Cl. 598, 601 (2001) ("If there is no jurisdiction, this court must dismiss the action."). For example, this court may not assert original or pendant jurisdiction over claims alleging tortious or criminal conduct. *See* 28 U.S.C. § 1491(a)(1) (providing that this court lacks jurisdiction over cases "sounding in tort"); *Keene Corp. v. United States,* 508 U.S. 200, 214, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) ("[T]ort cases are outside the jurisdiction of the Court of Federal Claims."); *see also Joshua v. United States,* 17 F.3d 378, 379 (Fed.Cir.1994) ("The [Court of Federal Claims] has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code . . . .").

The court recognizes that a pro se plaintiff is entitled to liberal construction of his pleadings. *See Haines,* 404 U.S. at 520, 92 S.Ct. 594 ("[A]llegations of the pro se complaint . . . [are held] to less stringent standards than formal pleadings drafted by lawyers . . . ."); *Vaizburd v. United States,* 384 F.3d 1278, 1285 n. 8 (Fed.Cir.2004) (noting that pleadings drafted by pro se parties "should . . . not be held to the same standard as [pleadings drafted by] parties represented by counsel") (citation omitted). Indeed, "it has long been the traditional role of this court to examine the record 'to see if [a *pro se*] plaintiff has a cause of action somewhere displayed.'" *Hunsaker,* 66 Fed.Cl. at 132 (quoting *Ruderer v. United States,* 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969) (alteration in original)). However, "[t]his latitude . . . does not relieve a *pro se* plaintiff from meeting jurisdictional requirements." *Bernard v. United States,* 59 Fed.Cl. 497, 499, *aff'd,* 98 Fed.Appx. 860 (Fed.Cir.2004); *see also Kelley v. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only.").

The court now addresses each of plaintiffs' claims in their Complaint, as clarified by their Response, and then addresses the possibility of transferring plaintiffs' action to the United States Tax Court pursuant to 28 U.S.C. § 1631 (2000).

**C. Plaintiffs' Due Process Claim**

■ Plaintiffs' first claim alleges that "[d]efendant [v]iolated the plaintiffs['] due process" by improperly issuing a Notice of Deficiency to plaintiffs. Compl. at 1; *id.* Ex. 1 (Sworn Notice in Affidavit Form) at 5. However,

> [t]he jurisdiction of this court is limited by 28 U.S.C. § 1491 to "such cases where the Constitution or federal statute requires the payment of money damages as compensation for the violation." Since the fifth amendment due process clause does not mandate the payment of money damages as compensation for violations thereof, the Court of Federal Claims lacks jurisdiction to preside over plaintiff[s'] allegations that [their] due process rights were violated.

*Sanders v. United States,* 34 Fed.Cl. 38, 49 (1995), *appeal dismissed by* 77 F.3d 502 (Fed.Cir.1996) (quoting *Murray v. United States,* 817 F.2d 1580, 1583 (Fed.Cir.1987) (affirming the dismissal of the plaintiff's due process claim because "[a]lthough the Fifth Amendment's due process clause provides that no person shall be deprived of property without due process of law, no language in the clause itself requires the payment of money damages for its violation") (internal citation omitted)); *see also Morales v. Unit-*

*ed States,* 19 Cl.Ct. 342, 345 (1990) ("Because the fifth amendment due process clause does not require the payment of money damages as compensation for its violation, the Claims Court has no jurisdiction to adjudicate such violations.") (citing *Murray,* 817 F.2d at 1583). Therefore, without regard to the merits of the process received by plaintiffs before or after receiving the Notice of Deficiency, plaintiffs' due process claim is DISMISSED for lack of subject matter jurisdiction under RCFC 12(b)(1).[9]

### D. Plaintiffs' Claim that Defendant Illegally Disallowed Plaintiffs' Deductions

Plaintiffs' second claim states that "[d]efendant[ ] illegally disallowed plaintiffs['] deductions" by disallowing the deduction of a "loss of $31,894.00 . . . taken in the year 2000 . . . for no apparent reason." Compl. at 1; *id.* Ex. 1 (Sworn Notice in Affidavit Form) at 3. In apparent connection with plaintiffs' first claim, plaintiffs allege that this and other disallowances, made "for no apparent reason," caused plaintiffs to not "receive[ ] a properly executed and/or bona fide assessment from [defendant] as is required under [Internal Revenue Code] Sections 6201(a), 6020(b), 6211 and other provisions of the Internal Revenue Code prior to being served with [the] Notice of Deficiency [for the 2001 tax year]." Compl. Ex. 1 (Sworn Notice in Affidavit Form) at 5. However, as defendant points out, "[t]he complaint does not allege that the plaintiffs filed a claim for [a] refund for the 2001 tax year, or paid all of the tax owed with respect to that year." Def.'s Mot. at 5. Instead, plaintiffs challenge the legality of defendant's disallowances and the right of

defendant to collect under the Notice of Deficiency. This court has no authority to rule on such claims.

Indeed, section (a) of the The Anti–Injunction Act, 26 U.S.C. § 7421 (2000), states that (except as provided in sections of Title 26 the United States Code not applicable here) [10] "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." Thus, this court has no jurisdiction to hear claims seeking to "restrain[ ] the assessment or collection of any tax" such as those pursued by plaintiffs. *See Fuselier v. United States,* 63 Fed.Cl. 8, 10–11 (2004) ("Plaintiff has failed to establish that this court has jurisdiction over any of his claims. He has failed to point to a statute granting this court authority to review deficiency cases. This is not surprising, because the United States Tax Court, and not this court, has jurisdiction over deficiency cases."); *Hunsaker,* 66 Fed.Cl. at 133 ("The taxpayer's remedy for any alleged deficiency . . . lies with the United States Tax Court."); *Rogers v. United States,* 2002 WL 850053, at *3 (Fed.Cl. Mar.28, 2002) (finding that the Court of Federal Claims is without jurisdiction over claims seeking damages for the allegedly illegal activities of the IRS).

■ In general, this court has jurisdiction to adjudicate a tax dispute only in the form of a tax refund action where the taxpayer has fully paid the disputed tax and submitted a claim for a refund to the IRS.[11] *See Shore v. United States,* 9 F.3d 1524, 1526 (Fed.Cir. 1993); *DiNatale v. United States,* 12 Cl.Ct.

---

9. Plaintiffs claim that "[t]he question of the day, then, is how far from the original intent of the Tucker Act have the courts strayed in their interpretations of the Tucker Act, holding, in essence, that the due process rights of citizens now take a back seat to the financial demands of the IRS?" Pls.' Resp. at 3. Neither the explicit language of the Tucker Act nor its legislative history evidences any "original intent" to redress due process claims in the United States Court of Federal Claims. Moreover, the court notes that plaintiffs have not indicated that they availed themselves of the processes available to them in the United States Tax Court by filing a petition for a redetermination of the deficiency within 90 days of the issuance of the Notice of Deficiency.

10. Many of the sections excepted from the Anti–Injunction Act pertain to claims brought in the United States Tax Court. *See, e.g.,* 26 U.S.C. §§ 6212(a) and (c), 6213(a), 6225(b), 6246(b), and 7429(b).

11. This court also possesses jurisdiction over certain other types of tax-related claims, none of which are applicable to the present case. *See* 28 U.S.C. §§ 1507 (declaratory judgment actions regarding the classification of an entity pursuant to 26 U.S.C. §§ 501(c)(3), 509, 4942(j)(3)) and 1508 (adjustment of partnership items); *see also Brown & Williamson Ltd. v. United States,* 231 Ct.Cl. 413, 688 F.2d 747, 748 (1982) (allowance of interest on tax refund).

72, 74 (1987); *see also Flora v. United States*, 362 U.S. 145, 163, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) (providing for the same rule in actions brought in the district courts under 28 U.S.C. § 1346(a), and adding that the "result is a system in which there is one tribunal for prepayment litigation [ (Tax Court) ] and another for post-payment litigation [ (district court) ], with no room contemplated for a hybrid of the type proposed by petitioner").[12] As provided by 26 U.S.C. § 7422(a) (2000),

> [n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary ....

■ Thus, in order for this court to have jurisdiction over plaintiffs' claim involving disputed disallowances and deficiencies, plaintiffs must fully pay the disputed tax for the tax year ending December 31, 2001, submit a claim for a refund to the IRS, and wait until the IRS either denies the claim or fails to respond to the claim within six months.[13] *See* 26 U.S.C. §§ 6511(a), 6532(a)(1), 7422(a); *United States v. Williams*, 514 U.S. 527, 533, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995); *Parsons ex rel. Linmar Prop. Mgmt. Trust v.*

*United States*, 65 Fed.Cl. 638, 641 (2005); *Lyashenko v. United States*, 41 Fed.Cl. 626, 630 (1998); *accord Harris v. United States*, 33 Fed.Cl. 470, 473 (1995) (finding that a pro se plaintiff failed to prove full payment of taxes and dismissing the action because "[b]efore this court has jurisdiction over a tax refund case, the claimant must demonstrate that he paid the taxes in question and timely filed a claim for their refund with the IRS"), *aff'd*, 106 F.3d 426 (Fed.Cir.1997) (table); *New York Life Ins. Co. v. United States*, 118 F.3d 1553, 1559 (Fed.Cir.1997) (explaining that "[t]he refund claim requirement is designed both to prevent surprise and to give adequate notice to the [IRS] of the nature of the claim ... thereby permitting an administrative investigation and determination") (quotation omitted); RCFC 9(h)(6) (requiring a taxpayer to provide the amount, date, and place of each payment to be refunded, as well as a copy of the refund claim, when filing a refund suit in the United States Court of Federal Claims). Because plaintiffs have made no showing that they meet this jurisdictional prerequisite to seeking tax redress in this court, their claim that defendant illegally disallowed deductions is DISMISSED for lack of subject matter jurisdiction under RCFC 12(b)(1).

E. Plaintiffs' Claim for Damages in the Amount of $1,970,558.00

■ Plaintiffs' third claim states that "[d]efendant[ ] ha[s] damaged plaintiffs in the

---

**12.** Plaintiffs state that this court's previous references to *Flora* were "used to provide the basis for the argument that this Court lacks jurisdiction in adjudicating any case other than a tax refund action.... The fact that Congress granted a right to recover money damages in a particular situation (tax refund suits) does not exclude, nor did the Supreme Court state that jurisdiction is invoked *only* ... when a substantive right to monetary damages exists." Pls.' Resp. at 4. On the contrary, the Tucker Act and the Supreme Court limit this court's jurisdiction to exactly those cases. *See* 28 U.S.C. § 1491(a)(1); *United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) ("Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States, and the claimant must demonstrate that the source of substantive law he relies upon 'can be fairly interpreted as mandating compensation by the Federal Government for the damages sustained.' ") (quoting *Testan*,

424 U.S. at 400, 96 S.Ct. 948) (internal citations and quotations omitted); *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) (same).

**13.** Although the court does not address the merits of plaintiffs' claim, the court notes that, contrary to plaintiffs' assertion that deductions were disallowed "for no apparent reason," Compl. Ex. 1 (Sworn Notice in Affidavit Form) at 3, plaintiffs were provided an "Explanation of Adjustments" in the Notice of Deficiency, which specifically explained that plaintiffs "did not sustain a net operating loss in the 2000 tax year within the meaning of [Internal Revenue Code § ] 172 because the loss was attributable solely to nonbusiness expenses. Therefore, there is no net operating loss carryover, and the claimed deduction is disallowed. Accordingly, [plaintiffs'] taxable income is increased $31,894.00 for the taxable year 2001." Compl. Ex. U (Notice of Deficiency) at 6.

amount of $1,970,558.00," Compl. at 1, apparently referring to lost partnership income, *see* Compl. Ex. 1 (Sworn Notice in Affidavit Form) at 2, 4. This claim does not allege that plaintiffs are "entitled to money from the United States because a statute or regulation grants [them] that right," *Ralston Steel Corp.*, 340 F.2d at 667, or because a contract or constitutional provision creates an equivalent right, *Fisher*, 402 F.3d at 1172–73. Plaintiffs do not cite any money-mandating provision that grants a right to sue the government for income lost in this situation, nor is the court aware of such a provision. Therefore, plaintiffs' claim for damages in the amount of $1,970,558.00 is DISMISSED for lack of subject matter jurisdiction under RCFC 12(b)(1).

### F. Plaintiffs' Claim for Punitive Damages Based on Fraud in the Amount of $1,000,000.00

■ Plaintiffs' fourth claim seeks "[p]unitive damages based on fraud in the amount of $1,000,000.00," Compl. at 1, for allegedly fraudulent actions committed by defendant which were "instrumental in removing the principal managers of the Costa Rican accounts holding the funds that were to be used for the funding of the joint venture project," Compl. Ex. 1 (Sworn Notice in Affidavit Form) at 3. "It is well established that the Court of Federal Claims lacks jurisdiction over cases sounding in tort." *Sumter v. United States*, 61 Fed.Cl. 517, 525–26 (2004). "If the government misconduct alleged was tortious, jurisdiction is not granted [to] the Claims Court under the Tucker Act . . . ." *New Am. Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1079 (Fed.Cir.1989); 28 U.S.C. § 1491(a)(1); *see also LeBlanc v. United States*, 50 F.3d 1025, 1030 (Fed.Cir. 1995) (noting that the claims at issue were "tort claims, over which the Court of Federal Claims has no jurisdiction"). Rather, "[j]urisdiction to hear tort claims is exclusively granted to the United States District Courts under the Federal Tort Claims Act." *McCauley v. United States*, 38 Fed.Cl. 250, 264 (1997), *aff'd*, 152 F.3d 948 (Fed.Cir.1998) (table); *see also* 28 U.S.C. 1346(b) (2000); *Wood v. United States*, 961 F.2d 195, 197 (Fed.Cir. 1992) ("[D]istrict courts have . . . exclusive jurisdiction over tort claims for any amount if they fall within the Federal Tort Claims Act.").

"A claim for fraud is a claim sounding in tort and therefore cannot be considered by the Court of Federal Claims." *Marlin v. United States*, 63 Fed.Cl. 475, 476 (2005) (citing *Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir.1997)) ("Because [plaintiffs'] complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims.") (quotation omitted and second alteration in original). Therefore, plaintiffs' claim for punitive damages based on fraud sounds in tort and must be DISMISSED for lack of subject matter jurisdiction under RCFC 12(b)(1).

### G. Plaintiffs' Contention that Defendant Breached a Contract Created by the Filing of Plaintiffs' Income Tax Return

■ Plaintiffs contend that the court has jurisdiction to hear their claims based on defendant's breach of a contract allegedly entered into when plaintiffs filed their Form 1040 joint tax return in 2001. *See* Pls.' Resp. ¶ 4 ("[T]he IRS demands for plaintiff[s'] money (property) is a demand for a contract with the plaintiff[s], which plaintiff[s] supplied to the IRS in good faith said contract, the 1040 form . . . ."). Defendant responds that "[t]he filing of an income tax return is not an offer on the part of the taxpayer. Rather, it is a legal requirement imposed by 26 U.S.C. § 6012." Def.'s Reply at 2.

The court agrees with defendant. Indeed, "the Court of Claims' jurisdiction with respect to contracts extends only to actual contracts, either express or implied in fact; it does not reach claims on contracts implied in law." *Hatzlachh Supply Co. v. United States*, 444 U.S. 460, 465 n. 5, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980) (citing, *inter alia*, *Alabama v. United States*, 282 U.S. 502, 507, 51 S.Ct. 225, 75 L.Ed. 492 (1931)). "[T]o establish jurisdiction based on an implied contract, an appellant must establish the elements of a contract, including consideration, mutuality of consent, and definiteness of terms." *Girling Health Sys., Inc. v. United States*, 949

F.2d 1145, 1147 (Fed.Cir.1991) (rejecting a taxpayer's contention that the instructions to an IRS form constituted an implied contract between IRS and the taxpayer). Moreover, "[t]he requirements of mutuality of intent and the lack of ambiguity in offer and acceptance are the same for an implied-in-fact contract as for an express contract." *Russell Corp. v. United States*, 210 Ct.Cl. 596, 537 F.2d 474, 482 (1976).

Plaintiffs have not established that any of these required elements of a contract existed when they filed their Form 1040 joint tax return in 2001. Thus, plaintiffs' contention that the court has jurisdiction to hear their claims based on defendant's breach of contract must fail.

H. Plaintiffs' Contention that Defendant has Committed a "Taking" of their Property under the Fifth Amendment to the United States Constitution

■ Plaintiffs contend that by alleging improper IRS collection activities, their "complaint does in fact, plead ... a clear breach of plaintiff[s'] due process of rights as defined within the just compensation clause of the Fifth Amendment to the Constitution, invoking the jurisdiction of the United States Court of Federal Claims under the Tucker Act." Pls.' Resp. ¶ 8; *see also id.* ¶ 7 ("[T]he taking of plaintiff[s'] money (property) by the IRS is a violation of plaintiff[s'] due process rights [and] property rights ...."). This contention is without merit. "Taxes do indeed 'take' income, but this is not the sense in which the Constitution uses 'takings.'" *Kerrigan v. United States*, No. 96–484 T, 1997 WL 685275, at *5 (Fed.Cl. Apr.30, 1997) (citing *Coleman v. Comm'r*, 791 F.2d 68, 70

(7th Cir.1986)). Defendant's tax collection activities were carried out pursuant to the authority to tax income granted to Congress under Article I, Section 8, Clause 1 of the United States Constitution. *See Springer v. United States*, 102 U.S. 586, 593, 26 L.Ed. 253 (1880). "This Court and other courts have routinely held that the lawful exercise of the Government's collection powers does not amount to a prohibited Fifth Amendment 'taking.'" *Kerrigan*, 1997 WL 685275, at *5 (citing *First Atlas Funding Corp. v. United States*, 23 Cl.Ct. 137, 141 (1991), *aff'd per curiam*, 954 F.2d 733 (Fed.Cir.1992) and *Sanders*, 34 Fed.Cl. at 49). Thus, although plaintiffs are correct that this court has jurisdiction over Fifth Amendment takings claims, plaintiffs have not properly stated a claim for a taking.[14] *Accord Kerrigan*, 1997 WL 685275, at *5. Thus, plaintiffs' contention that defendant has "taken" their property under the Fifth Amendment fails.

I. Transfer of Plaintiffs' Action to the United States Tax Court Pursuant to 28 U.S.C. § 1631

■ The court now considers whether it may transfer plaintiffs' claims to the United States Tax Court pursuant to 28 U.S.C. § 1631 to cure want of jurisdiction.[15] Section 1631 provides in pertinent part:

Whenever a civil action is filed in a court as defined in section 610 of this title ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed or noticed, and the action ... shall proceed as if it had been filed in or

---

14. Furthermore, the court notes that if, as plaintiffs argue, defendant acted improperly, then no taking could have occurred because a "taking" can only result from the authorized acts of government officials. *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802–03 (Fed.Cir.1993); *Florida Rock Indus., Inc. v. United States*, 791 F.2d 893, 898–99 (Fed.Cir.1986); *Kerrigan*, 1997 WL 685275, at *5 n. 9. And, as explained above, claims disputing an allegedly improper tax assessment are not within this court's jurisdiction, *see supra*, Part II.D, nor are claims based on unauthorized acts by governmental officials that sound in tort, *see supra*, Part II.F.

15. Although plaintiffs have not requested a transfer, because they are proceeding pro se, the court addresses the possibility. *See Vaizburd*, 384 F.3d at 1285 n. 8; *Hunsaker*, 66 Fed.Cl. at 132; *see also Britell v. United States*, 318 F.3d 70, 73 (1st Cir.2003) ("Congress's use of the phrase 'shall ... transfer' in section 1631 persuasively indicates that transfer, rather than dismissal, is the option of choice."); *Sodexho Marriott Mgmt., Inc. v. United States*, 61 Fed.Cl. 229, 241 (2004) ("[The Court of Federal Claims] ha[s] the authority and duty to transfer a case under 28 U.S.C. § 1631 ....").

noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.  Section 610 provides that: [T]he word "courts" includes the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the [United States Court of Federal Claims], and the Court of International Trade.

28 U.S.C. § 610 (2000).

Thus, under § 1631, a federal "court," as defined by § 610, may transfer a case to another "such court" if the following three elements are satisfied: (1) the transferor court lacks subject matter jurisdiction; (2) at time the case was filed, it could have been brought in the transferee court; and (3) such transfer is in the interest of justice.  *See Rodriguez v. United States,* 862 F.2d 1558, 1559–60 (Fed.Cir.1988); *Sodexho,* 61 Fed.Cl. at 241; *Kolek v. Engen,* 869 F.2d 1281, 1284 (9th Cir.1989).  As explained above, *see supra,* Parts II.C–H, this court lacks subject matter jurisdiction over plaintiffs' claims and thus plaintiffs satisfy the first element.  In addition, plaintiffs' claims questioning the accuracy and validity of the Notice of Deficiency "could have been brought [in the Tax Court] at the time [they were] filed" in this court, 28 U.S.C. § 1631, 89 days after the Notice of Deficiency was mailed, *see* 26 U.S.C. 6213(a), so plaintiffs satisfy the second element.  With respect to the third element, because a petition for reconsideration would be dismissed if presently brought in the Tax Court, *see supra,* note 3, and in light of the fact that plaintiffs are proceeding pro se, transfer of their claims to the Tax Court, if possible, would be in the "interest of justice." 28 U.S.C. § 1631; *see Kolek,* 869 F.2d at 1284 ("Transfer of Kolek's appeal serves the interests of justice because his errant filing was caused in part by his pro se status ....."); *Sternberg v. Dep't of Health and Human Servs.,* 299 F.3d 1201, 1205 (10th Cir.2002) ("Sternberg, *pro se,* erroneously filed a petition for review in this court instead of the district court.  In the interests

of justice, we transferred the petition to the United States District Court for the District of Kansas." (citing 28 U.S.C. § 1631)); *see also Harris v. McCauley,* 814 F.2d 1350, 1352 (9th Cir.1987) ("[Section 1631] serves to 'aid litigants who were confused about the proper forum for review.'" (quoting *Am. Beef Packers, Inc. v. ICC,* 711 F.2d 388, 390 (D.C.Cir.1983))).  Thus, plaintiffs' claims disputing the Notice of Deficiency appear to satisfy the three-part test for transfer contained in 28 U.S.C. § 1631.

However, pursuant to § 1631, this court, which is specifically enumerated under § 610, has authority only to transfer claims to "any other *such court.*" 28 U.S.C. § 1631 (emphasis added).  The United States Tax Court is not specifically enumerated in the definition of such "courts." *See* 28 U.S.C. § 610.  It is not clear that the Tax Court is included within the phrase "any other such court" to which a transfer may be made under the federal transfer statute.  28 U.S.C. § 1631.  The court is unaware of any authority that so indicates.  *Cf. Rocovich v. United States,* No. 96–515T, 1998 WL 257288, 1998 U.S. Claims LEXIS 82, at *4 (Fed.Cl. Apr.17, 1998) ("Because this court will not transfer this case [to the Tax Court], the court need not address defendant's contention that such a transfer would be inconsistent with the transfer requirements established in Section 1631.").  Therefore, the court must interpret § 610 and decide whether its list of those federal judicial bodies falling under the definition of "courts" is meant to be exclusive and exhaustive, or whether it leaves room for additional courts not specifically enumerated (such as the United States Tax Court).

The canons of statutory interpretation require the court to consider first the plain language of the statute and any binding authority interpreting the language.  *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 46:01, at 113–129 (6th ed. 2000) (Singer); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself."); *Greyhound Corp. v. Mt. Hood Stages, Inc.,*

437 U.S. 322, 330, 98 S.Ct. 2370, 57 L.Ed.2d 239 (1978) (same); *see also Brown v. Dept. of Health and Human Servs.*, 920 F.2d 918, 920 (Fed.Cir.1990) ("[A]bsent ambiguous language or clearly contrary legislative intent, a statute is construed in accordance with its plain meaning.") (citation omitted); Singer § 46:01, at 127 ("If the language is plain, unambiguous and uncontrolled by other parts of the act or other acts upon the same subject[,] the court cannot give it a different meaning."). The plain language of § 610 states that "the word 'courts' *includes* the courts [enumerated thereafter]." 28 U.S.C. § 610 (emphasis added). The question, then, is whether the Tax Court, while not "include[d]" in the list of "courts" under § 610, may also be considered a "court" for the purposes of the statute, i.e., whether the list of "courts" under § 610 is exclusive and exhaustive or partial and incomplete.

The dictionary definition of the word "include(s)" aids the court in this inquiry. *See Burns v. Alcala*, 420 U.S. 575, 577–79, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975) (using dictionary definitions to interpret terms in a statute and finding that the definitions demonstrate ambiguity in the terms); *Nat'l R.R. Passenger Corp. v. Boston & Me. Corp.*, 503 U.S. 407, 418–19, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992) (same). The relevant definition of the word "include(s)" is "[t]o consider with or place into a group, class, or total." *The American Heritage Dictionary of the English Language* 887 (4th ed. 2000) (AHD). Notably, below the definition of "include(s)," the AHD states that "[*i*]nclude often implies an incomplete listing." *Id.; see also Black's Law Dictionary* 777–78 (8th ed.2004) (defining the word "include" to mean "[t]o contain as a part of something," and noting that "[t]he participle *including* typically indicates a partial list"). The Usage Note in the AHD further explains: "Some writers insist that *include* be used only when it is followed by a partial list of the contents of the referent of the subject.... [O]ne must use *comprise* or *consist of* to provide full enumeration ...." AHD at 887. However, the Usage Note also explains that *"[i]nclude* does not rule out the possibility of a complete listing." *Id.* Based on the AHD's treatment of the word "include(s)," it appears to the court that the

"plain language of the statute" is somewhat ambiguous as to whether the United States Tax Court, or any other federal court not specifically enumerated in § 610, can be "include[d]" in the definition of "courts" in § 610. *See* Singer § 46:04, at 145–46 ("A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses.").

While the court is unaware of any authority specifically considering whether the United States Tax Court is a "court" under § 610 such that another "court" could, under § 1631, transfer an action to the Tax Court, analyses of these statutes in analogous circumstances provide guidance. In *Schafer v. Department of the Interior*, 88 F.3d 981 (Fed.Cir.1996), the United States Court of Appeals for the Federal Circuit examined §§ 610 and 1631 in the context of a requested transfer to the Federal Labor Relations Authority (FLRA). The court found that:

> Section 1631 empowers us to transfer appeals only to "courts." Administrative bodies such as the FLRA *are not included within the applicable definition of "courts."* In short, transfer of this case to the FLRA is not an option that is available to us.

*Id.* at 987 (emphasis added) (citing 28 U.S.C. § 610 and *Amos v. United States*, 22 Cl.Ct. 724, 734 (1991) (holding that administrative bodies are not included within the definition of "courts" under § 610)).

More recently, the Federal Circuit rejected the proposition that the Equal Employment Opportunity Commission (EEOC) could transfer an action under § 1631:

> [T]he EEOC did not, and indeed cannot, transfer under section 1631 .... Section 1631 defines "court" by reference to 28 U.S.C. § 610. Section 610 specifies that "courts" include the district courts of the United States and various other judicial bodies. The EEOC, though perhaps quasi-judicial in nature, *is not among those listed in section 610.*

*Oja v. Dep't of the Army*, 405 F.3d 1349, 1355 n. 2 (Fed.Cir.2005) (emphasis added). Thus, significantly, when examining § 1631 the

Federal Circuit has limited the "courts" to which a transfer can be made or from which a transfer can be received to those specifically enumerated under § 610.[16]

The court believes that the *Oja* case in the Federal Circuit appears to be—if not dispositive of the issue—very nearly so. Nevertheless, given the ambiguity in the statutory language, the court considers the legislative history of § 610 and interpretation of the "statute as a whole" for additional guidance. *See* Singer § 46:04, at 150 ("[W]here the language of the statute is ambiguous the court may examine the scope, history, content, subject matter and object of [t]he statute to discern legislative intent."); *Comm'r v. Tufts,* 461 U.S. 300, 315, 103 S.Ct. 1826, 75 L.Ed.2d 863 (1983) ("[T]he facial meaning of the statute [is] ambiguous, and therefore we must look to the statute's structure and legislative history."); *Pac. Nat'l Cellular v. United States,* 41 Fed.Cl. 20, 27 (1998) ("Accepted principles of statutory construction ... provide that courts must interpret a statute as a whole." (citing *Beecham v. United States,* 511 U.S. 368, 372, 114 S.Ct. 1669, 128 L.Ed.2d 383 (1994) (internal citations omitted))).

The legislative history of Title 28 of the United States Code (Judicial Code) indicates that the United States Tax Court was not meant to be included in any of its provisions, including § 610. Indeed, in 1948 the 80th Congress submitted Senate Report No. 1559 on Title 28, which states:

> As passed by the House of Representatives, the bill included provisions covering the Tax Court of the United States. These proposed to transfer that court from the Internal Revenue Code, title 26, United States Code, to the Judicial Code. This proposed transfer of the Tax Court to the Judicial Code has proved controversial with respect to the court and as to those who are entitled to practice before it. Since every effort has been made to avoid controversial matters in this revision, the committee recommends that all Tax Court provisions be omitted from this bill.

S.Rep. No. 80–1559, at 1676 (1948) (entitled "Revising Codifying, and Enacting into Law Title 28 of the United States Code, Entitled 'Judicial Code and Judiciary' ") (Senate Report). Throughout the Senate Report amendments are made and explained by the statement: "This amendment is necessary in order to eliminate from the bill all provisions relating to the Tax Court." *Id.* at 1677–1685. Thus, the United States Tax Court and provisions related to it remained in Title 26 of the United States Code (the Internal Revenue Code, *see* 26 U.S.C. §§ 1–9833. This

---

**16.** This court and numerous others have held that § 1631 does not include various quasi-judicial administrative fora or state courts. *See Santa Fe, Inc. v. United States,* 13 Cl.Ct. 464, 469 (1987) ("Although the Court agrees with the plaintiff that it would be in the interest of justice to transfer this case to the [Veterans' Administration Board of Contract Appeals (Board)], it appears that section 1631 of Title 28 is not the appropriate vehicle to accomplish the transfer. Section 1631 allows for the transfer of cases only between *courts* as defined in section 610 of Title 28. Thus, section 1631 will not provide the necessary authority for a federal court to transfer this case to the Board."); *Moravian Sch. Advisory Bd. v. Rawlins,* 70 F.3d 270, 274 (3rd Cir. 1995) ("Because §§ 1631 and 610 clearly demonstrate that Congress intended to limit the authority of the federal courts to transfer cases only to other federal courts, we have held that § 1631 provides no authority for a federal court transfer a case over which it lacks jurisdiction to a state court."); *Shendock v. Office of Workers' Comp.,* 893 F.2d 1458, 1467 (3rd Cir.1990) ("[Section 1631] ... does not authorize transfer of a petition mistakenly filed in an administrative tribunal to the appropriate court of appeals. For that

to happen, Congress must change the law. Absent statutory authority, the traditional general rule that a court may not transfer a matter over which it lacks jurisdiction governs."); *Kier Bros. Invs. v. White,* 943 F.Supp. 1, 4 (D.D.C.1996) ("[T]he Court may not transfer this case to a state court under § 1631 because that section only authorized transfer to those federal courts defined in 28 U.S.C. § 610."); *Kester v. Shouse,* No. 05–2121–KHV, 2005 WL 2491588, at *2 n. 2, 2005 U.S. Dist. LEXIS 23066, at *8 n. 2 (D.Kan. Oct. 7, 2005) ("[T]ransfer of a case under Section 1631 from a district court to a bankruptcy court ... is not appropriate because ... the definition of courts in 28 U.S.C. § 610 no longer specifically includes bankruptcy courts."); *Connors v. Consolidation Coal Co.,* 664 F.Supp. 982, 985 (W.D.Pa.1987) ("Neither can we transfer the case to the appropriate administrative body, because transfer for want of jurisdiction is available only to a court, as that term is defined under 28 U.S.C. § 610."); *see also In re Vincente,* 260 B.R. 354, 360 n. 11 (Bankr.E.D.Pa.2001) ("Whether the bankruptcy court is a court within the definition of § 610 for the purposes of § 1631 is not readily answered and beyond the scope of this opinion.").

circumstance supports the interpretation that the Tax Court was not meant to be included in the list of "courts" under Title 28, 28 U.S.C. § 610. The court also observes that numerous amendments to § 610 have inserted or deleted specific courts from the statute, further suggesting that Congress intended that the list of "courts" be limited to those specifically enumerated. *See* Pub.L. No. 82–248, 65 Stat. 725 (1951) (inserting "the District Court of Guam"); Pub.L. No. 85–508, § 12(e), 72 Stat. 348 (1958) (deleting "the District Court for the Territory of Alaska"); Pub.L. No. 95–598, Title II, § 226, 92 Stat. 2665 (1978) (deleting "bankruptcy courts"); *see also* Pub.L. No. 96–417, Title V, § 501(15), 94 Stat. 1742 (1980) (substituting "Court of International Trade" for "Customs Court"); Pub.L. No. 97–164, Title I, Part A, § 120(a), 96 Stat. 33 (1982) (substituting "United States Claims Court" for "Court of Claims, the Court of Customs and Patent Appeals").

Moreover, "[i]n construing a statute, courts should attempt not to interpret a provision such that it renders other provisions of the same statute inconsistent, meaningless, or superfluous." *Pac. Nat'l Cellular*, 41 Fed.Cl. at 27; *see also* Singer § 46:04, at 154 ("[E]ach part or section should be construed in connection with every other part or section so as to produce a harmonious whole.") (citations omitted). With this in mind, the court notes that the only other provision of Title 28 besides § 1631 to refer to the definition of "courts" in § 610 is § 963, which states: "As used in this chapter [28 U.S.C. §§ 951–963], unless the context indicates otherwise, the words 'court' and 'courts' include the Supreme Court of the United States and the courts enumerated in section 610 of this title." 28 U.S.C. § 963; *see also* 5 U.S.C. §§ 5584(a)(3), 5595(a)(1)(E), and 5596(a)(2) (2000) (other statutory provisions referring to § 610). Section 963 further indicates to the court that "the courts enumerated in section 610 of this title" are the only courts to which an action may be transferred under § 1631.

Therefore, although transfer may be otherwise "in the interest of justice," 28 U.S.C. § 1631, and plaintiffs' claims questioning the accuracy and validity of the Notice of Deficiency "could have been brought [in the Tax Court] at the time [they were] filed" here, *id.*, the court finds that it is without authority under the federal transfer statute, 28 U.S.C. § 1631, to transfer plaintiffs' claims to the United States Tax Court because it is not specifically enumerated as a "court" under 28 U.S.C. § 610.

### III. Conclusion

For the foregoing reasons, defendant's Motion to Dismiss is GRANTED and the Clerk of the Court shall DISMISS plaintiffs' complaint for lack of subject matter jurisdiction under RCFC 12(b)(1). No costs.

IT IS SO ORDERED.