**Frank E. ADAIR, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 05-392 C.

United States Court of Federal Claims.

Feb. 28, 2006.

Wallace E. Harrell, Brunswick, GA, for plaintiffs. Mark D. Johnson, Brunswick, GA, of counsel.

John H. Williamson, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Todd M. Hughes, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. Alicia Daniels–Lewis, Federal Bureau

of Prisons, U.S. Department of Justice, Washington, DC, of counsel.

## OPINION

HEWITT, Judge.

Plaintiffs, current and former employees of the Federal Bureau of Prisons, seek to recover hazardous duty pay or an environmental differential, corresponding additional contributions to their retirement plans, and interest, for exposure to second-hand cigarette smoke permitted by defendant during the course of their employment.[1]

## I. Background

Plaintiffs are current and former General Schedule, Wage Supervisor, and Wage Grade employees of the Federal Bureau of Prisons at the Federal Correctional Institute in Jesup, Georgia (FCI–Jesup). Pls.' Am. Compl. ¶¶ 1, 4–5. Plaintiffs filed their initial Complaint (Pls.' Compl.) on March 22, 2005 and their Amended Complaint (Pls.' Am. Compl.) on May 11, 2005. Plaintiffs allege that defendant's policy of allowing inmates to smoke

tobacco products at FCI–Jesup in areas where plaintiffs worked, many of which areas were "enclosed, poorly ventilated buildings," Pls.' Am. Compl. ¶ 12, exposed them on a daily basis to second-hand cigarette smoke. Pls.' Am. Compl. ¶ 15. Plaintiffs contend, and defendant concedes, that cigarette smoke contains toxic substances. Pls.' Am. Compl. ¶ 16; Defendant's Reply in Support of Its Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Failure to State a Claim Upon Which Relief Can Be Granted (Def.'s Reply) at 4. Plaintiffs assert that "[b]y permitting smoking in ... locations where [p]laintiffs were required to work, [d]efendant exposed [p]laintiffs to toxic substances contained in second-hand cigarette smoke." Pls.' Am. Compl. ¶ 16. Plaintiffs contend that "exposure to second-hand smoke constitutes exposure to toxic chemical materials for which a hazard pay differential is required under 5 U.S.C. § 5343 and 5 U.S.C. § 5545 and the regulations promulgated thereunder," Pls.' Am. Compl. ¶ 35, and that plaintiffs did not receive a pay differential for their exposure to second-hand smoke, Pls.' Am. Compl. ¶¶ 36–37.[2] Accord-

---

1. Plaintiffs also request attorney's fees and costs. In addition, they request a declaratory judgment that "[p]laintiffs were exposed to hazardous substances ... [which exposure] entitl[es] them to receive hazard pay differentials" and that "[d]efendant has violated its statutory obligations and deprived each of the [p]laintiffs of their rights, protections and entitlements under law" and a trial by jury. Plaintiffs' Amended Complaint (Pls.' Am. Compl.) at 13. In order for this court to consider plaintiffs' request for attorney's fees and costs, plaintiffs would have to prevail; accordingly, the court cannot address plaintiffs' requested relief. In addition, this court does not have jurisdiction to grant non-monetary relief in this non-bid-protest context "unless it is tied and subordinate to a monetary award." *Martinez v. United States*, 26 Cl.Ct. 1471, 1476, 1992 WL 311337 (1992) (quoting *Austin v. United States*, 206 Ct.Cl. 719, 723, 1975 WL 22844 (1975)). Because the court does not grant monetary relief in this case, it does not reach the question whether plaintiffs' requested declaratory judgments would be "tied and subordinate to" their requested monetary relief. In addition, all trials conducted in this forum are to the court. The court cannot consider plaintiffs' request for a trial by jury.

2. Plaintiffs point out that Warden Jose M. Vasquez of FCI–Jesup has issued a Memorandum declaring that the FCI–Jesup campus "will dis-

continue the purchas[e] of any tobacco products for sale" as of December 2005 and that, starting in April 2006, inmates will no longer be permitted to smoke at FCI–Jesup, which changes, the Warden notes, "[will] bring[] the Bureau of Prisons and FCI Jesup policy into compliance with Executive Order 13058." Pls.' Am. Compl. ¶ 13 (quoting Memorandum from Jose M. Vasquez, Warden, FCI–Jesup (Apr. 4, 2005) (Memorandum)). The warden's statement that the policy change "[will] bring[] ... FCI Jesup ... into compliance" is not correct. Section 1 of Executive Order 13058, issued by President Clinton on August 9, 1997, prohibits "[t]he smoking of tobacco products ... in all interior space owned, rented, or leased by the executive branch of the Federal Government," of which the Federal Bureau of Prisons is a part. Exec. Order No. 13,-058, 3 C.F.R. 216 (1998), *reprinted in* 5 U.S.C. § 7301 (2000) (Executive Order). However, correctional facilities are explicitly recognized as exempt from the Executive Order in Section 2. *Id.* at § 2. Furthermore, the Executive Order states that "[it] does not create any *right* to administrative or judicial review, or any other right or benefit, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities" which would give rise to subject matter jurisdiction in any court. *Id.* at § 8 (emphasis added). Therefore, although the Memorandum states that its new policy brings the FCI–Jesup campus into compliance

ingly, plaintiffs seek hazardous duty pay pursuant to Sections 5343 and 5545 for exposure to second-hand smoke during the course of their employment.

On August 1, 2005, defendant filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Failure to State a Claim Upon Which Relief Can Be Granted (Def.'s Mot. or Motion) under Rules of the Court of Federal Claims (RCFC) 12(b)(1) and (6), arguing that 5 U.S.C. §§ 5545 and 5343 do not require the payment of a hazard pay differential or an environmental differential for exposure to second-hand tobacco smoke. Def.'s Mot. at 1. Defendant argues that the statutes are not money-mandating as applied to plaintiffs' claims and that, therefore, this court lacks subject matter jurisdiction or, in the alternative, plaintiffs have failed to state a claim upon which relief can be granted. Def.'s Mot. at 2. On November 3, 2005, plaintiffs filed their Response to Motion (Pls.' Resp. or Response). On November 18, 2005, defendant filed its Reply in Support of Its Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Failure to State a Claim Upon Which Relief Can Be Granted (Def.'s Reply or Reply). By leave of the court, plaintiffs filed their Surreply to Defendant's Motion to Dismiss (Pls.' Surreply or Surreply) and an Appendix of Exhibits on December 19, 2005 in support of their claim, and defendant filed its Sur-Surreply in Support of Its Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Failure to State a Claim Upon Which Relief Can Be Granted (Def.'s Sur-Surreply or Sur-Surreply) on January 4, 2006. Because neither the statutes nor the accompanying regulations on which plaintiffs base their claim require the payment of a hazard pay differential for exposure to second-hand smoke, defendant's motion is GRANTED.

## II. Discussion

### A. Subject Matter Jurisdiction

#### 1. Standard of Review

Because subject matter jurisdiction is "an 'inflexible' threshold matter," the court must determine at the outset whether it has jurisdiction over the subject matter. *Abbott v. United States*, 47 Fed.Cl. 582, 584 (2000) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)); *Nippon Steel Corp. v. United States*, 219 F.3d 1348, 1352 (2000) (holding that the jurisdictional question must be answered affirmatively before deciding the merits of a case: "Without jurisdiction the court cannot proceed at all in any cause."). If the court does not have jurisdiction, it must dismiss the claim. RCFC 12(h)(3); *see Miller v. United States*, 67 Fed. Cl. 195, 197 (2005). In order for this court to have subject matter jurisdiction over a claim under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), plaintiffs must identify a "separate source of substantive law," such as a statute or regulation, "that can 'fairly be interpreted' as mandating compensation by the United States." *Miller*, 67 Fed.Cl. at 197 (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005) (*Fisher II* )); *Carroll v. United States*, 67 Fed.Cl. 82, 84 (2005) (citing

---

with the Executive Order, the court notes that correctional facilities-including FCI–Jesup-are exempt from the Executive Order, and that, accordingly, FCI–Jesup need not be in compliance with it. Despite plaintiffs' claims that defendant "violat[ed] Executive Order 13058 and its own Program Statement Number 1640–03," Pls.' Am Compl. ¶ 15 (although plaintiffs cite Federal Bureau of Prisons Program Statement 1640–03 and that *Program Statement has been rescinded by* Federal Bureau of Prisons Program Statement 1640.04, the court notes that the language quoted by plaintiffs is exactly the same or substantially similar to that found in Program Statement 1640.04); *see* Federal Bureau of Prisons Program Statement 1640.04 § 1 (March 15, 2004),

at http://www.bop.gov/policy/progstat/1640_004.pdf (last visited Feb. 22, 2006) (incorporating into the Program Statement 28 C.F.R. § 551.160 (Purpose and Scope) (stating that "the Bureau of Prisons will restrict areas and circumstances where smoking is permitted")), the court notes that the Executive Order did not apply to correctional facilities of the Bureau of Prisons, so that by permitting exposure of plaintiffs to second-hand smoke at FCI–Jesup in particular, defendant did not violate the Executive Order. Defendant did not violate Program Statement 1640.04, either, because that Program Statement prescribed only a general policy of "restrict[ing] areas and circumstances in which smoking is permitted" without supplying a specific directive to which that statement applied.

*United States v. Mitchell,* 463 U.S. 206, 218–19, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). Under a former articulation of the test, a plaintiff need only have made a "non-frivolous allegation that the statute or regulation [might have been] fairly interpreted as money-mandating," and the question as to whether the allegations contained in the complaint would place plaintiff's claim within the purview of the statute was considered a second step. *Fisher II,* 402 F.3d at 1172.

■ However, the Federal Circuit, in its recent en banc decision in *Fisher II,* rearticulated the test as a one-step process in which the source alleged as money-mandating would be evaluated against plaintiffs' claims to determine whether the source was money-mandating as to the facts alleged.[3] *Id.* at 1173. In this inquiry, "the question of the court's jurisdictional grant blends with the merits of the claim" and the two must be evaluated together. *Id.* at 1171–72; *see Nippon Steel Corp.,* 219 F.3d at 1353 (recognizing that the "jurisdictional issue and the merits [can be] inextricably intertwined"). If the court finds that the alleged source of a money-mandating obligation does not mandate compensation in the fact situation pleaded by plaintiffs, the court "shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal-the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act." *Fisher II,* 402 F.3d at 1173.

### 2. The Parties' Jurisdictional Arguments

Defendant has moved to dismiss plaintiffs' claims pursuant to RCFC 12(b)(1) for "lack of jurisdiction over the subject matter."

RCFC 12(b)(1). In evaluating a claim for subject matter jurisdiction, the court assumes all facts alleged by plaintiffs to be true and draws all reasonable inferences from those facts in plaintiffs' favor. *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir. 1995); *see Skillo v. United States,* 68 Fed.Cl. 734, 738 (2005).

Defendant has moved in the alternative to dismiss plaintiffs' claims pursuant to RCFC 12(b)(6) for failure to state a claim for which this court can grant relief. "Dismissal is proper where plaintiff[s] 'can prove no set of facts in support of [their] claim which would entitle [them] to relief.' " *Greenlee County, Arizona v. United States,* 68 Fed.Cl. 482, 485 (2005) (quoting *Leider v. United States,* 301 F.3d 1290, 1295 (Fed.Cir.2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957))). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court is instructed to presume that undisputed factual allegations in the complaint are true and to construe factual allegations favorably to the pleader. *Abbott,* 47 Fed.Cl. at 584 (citing, inter alia, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) and *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977)).

Plaintiffs argue that the statutes are money-mandating. Pls.' Resp. at 7–12. They base their claim on the "mandatory language" "shall" contained in the statutes and accompanying regulations and previous decisions of this court that have determined that the statutes at issue mandate compensation in other contexts. Pls.' Resp. at 8–9 (citing *Abbott,* 47 Fed.Cl. at 587–88 (concession by

---

**3.** The *Fisher II* court noted that it is unclear whether the test for a money-mandating source remains that articulated by the United States Supreme Court in *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (*Mitchell II* ), that a statute or regulation is money-mandating if it "can *fairly be interpreted* as mandating compensation by the Federal Government for the damages sustained," *Fisher v. United States,* 402 F.3d 1167, 1173 (Fed.Cir. 2005) (*Fisher II*) (quoting *Mitchell II,* 463 U.S. at 217, 103 S.Ct. 2961 (quoting *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967)))) (emphasis added), or whether the

Supreme Court's decision in *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) (*White Mountain* ), altered the test so that a statute or regulation need only be *"reasonably amenable* to the reading that it mandates a right of recovery," *Fisher II,* 402 F.3d at 1147 (quoting *White Mountain,* 537 U.S. at 473, 123 S.Ct. 1126). After *Fisher II,* "[i]t is now clear that a plaintiff has to make more than a non-frivolous allegation that a statute is money-mandating to state a valid Tucker Act basis of jurisdiction. What is not clear after *Fisher II* is the exact formulation of the Tucker Act jurisdictional test." *Carroll v. United States,* 67 Fed.Cl. 82, 84 (2005) (citation omitted).

government that 5 U.S.C. § 5545(d) was a money-mandating statute for purposes of exposure to "virulent biologicals")); *Averi v. United States*, 23 Cl.Ct. 127, 132 (1991) ("[5 U.S.C.] § 5343 mandates the payment of money" for jurisdictional purposes but ultimately was not found to mandate payment in that case); *Hannon v. United States*, 29 Fed.Cl. 142, 147–48 (noting that the use of the word "shall," as distinguished from the word "may," indicates that the statute is money-mandating).

Defendant points out that statutes may be money-mandating under one set of facts but not another. Def.'s Mot. at 8 (citing *Ont. Power Generation, Inc. v. United States*, 369 F.3d 1298, 1303 (Fed.Cir.2004) (holding the Export Clause of the Constitution to be money-mandating but not as to plaintiff who never paid taxes to the Federal Government)). Defendant concedes that the regulations are "clearly money-mandating" in that they require the payment of differentials where applicable. Def.'s Mot. at 7. However, defendant argues that the statutes and regulations are money-mandating only for the limited categories defined by OPM and that the categories defined in the regulations do not cover exposure to second-hand cigarette smoke. Def.'s Mot. at 8 ("[T]hese regulations are not money-mandating for purposes of plaintiffs' claim."); *see also* Def.'s Reply at 2–4, 6. Plaintiffs argue that the jurisdiction of this court depends on "whether the statute[s] and regulation[s] at issue are *arguably* money-mandating" with respect to plaintiffs' claims, not whether plaintiffs will "ultimately prevail." Pls.' Resp. at 10. Plaintiffs argue that, as long as they have stated an "arguable claim" that the statutes identified require compensation under the facts they have pleaded, their case should not be dismissed for lack of subject matter jurisdiction. Pls.' Surreply at 3; *see* Def.'s Mot. at 5 ("The general rule is that this court possesses jurisdiction over a case if a claimant makes a nonfrivolous allegation that he is 'entitled to money from the United States ....' ") (quoting *Ralston Steel Corp. v. United States*, 169 Ct.Cl. 119, 340 F.2d 663, 667 (1965)).

■ A statute cannot be money-mandating in the abstract. It is only when applied to a claim for which the statute mandates compensation that the statute can be said to be "money-mandating." *See Fisher II*, 402 F.3d at 1173 (statute must be "money-mandating" as to "source as alleged and pleaded"). In this case, 5 U.S.C. § 5545 (2000) requires payment of hazardous duty pay when "an employee ... is assigned to and performs any duty specified in appendix A of this subpart." 5 C.F.R. § 550.904(a) (2005); 5 C.F.R. pt. 550, subpt. I, app. A (Schedule of Pay Differentials Authorized for Hazardous Duty Under Subpart I). Similarly, 5 U.S.C. § 5343 (2000) requires the payment of an environmental differential when "an employee ... [is] exposed to a working condition or hazard that falls within one of the categories [listed in appendix A]." 5 C.F.R. § 532.511(a), (d) (2005); 5 C.F.R. pt. 532, subpt. E, app. A (Schedule of Environmental Differentials Paid for Exposure to Various Degrees of Hazards, Physical Hardships, and Working Conditions of an Unusual Nature). However, for the reasons more particularly stated below, these statutes and accompanying regulations do not mandate the payment of compensation for exposure to second-hand smoke. Accordingly, this court lacks jurisdiction and cannot reach the merits of the case.

### 3. Canons of Interpretation of Statutory and Regulatory Language

■ In interpreting a statute, the court first considers the plain language of the statute along with "any binding authority interpreting the language" in order to discern congressional intent. *Skillo*, 68 Fed.Cl. at 744 (citing 2A Norman J. Singer, *[Sutherland] Statutes and Statutory Construction* § 46:01, at 113–29 (6th ed. 2000) (Singer)). Unless defined in the statute, words are understood to have their "ordinary and common meaning." 2A Singer, § 47:27, at 336–38 (indicating that "words of a statute must be construed in accordance with their ordinary and common meaning" especially where the term is "undefined" by the statute or applicable regulatory scheme); *Murakami v. United States*, 398 F.3d 1342, 1352 (Fed.Cir.2005) ("[W]hen interpreting a statute, 'we give the words of a statute their ordinary, contemporary, common meaning, absent an indication

Congress intended them to bear some different import.'") (quoting *Williams v. Taylor*, 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000)); *Am. Airlines, Inc. v. United States*, 68 Fed.Cl. 723, 730 (2005) (words construed according to their "plain and ordinary meaning"); *Navajo Ref. Co., L.P. v. United States*, 58 Fed.Cl. 200, 209–210 (2003) (stating and applying "plain meaning rule of statutory interpretation").

"In construing a regulation, ... the court must first determine whether Congress has authorized the agency to promulgate rules carrying the force of law." *Am. Airlines*, 68 Fed.Cl. at 730. "'[W]hen it appears that Congress [has] delegated authority to the agency generally to make rules carrying the force of law,'" *id.* (quoting *United States v. Mead*, 533 U.S. 218, 226–27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)), the court "ascertain[s] ... the plain meaning" of the regulations by according words used in the regulations their "ordinary and common meaning" unless a definition is provided. *Tesoro Haw. Corp. v. United States*, 405 F.3d 1339, 1346 (Fed.Cir.2005) ("We construe a regulation in the same manner as we construe a statute, by ascertaining its plain meaning."); 1A Singer § 31:6, at 723–24 (general rules of interpretation apply to regulations). Regulations promulgated to fill a gap in the statutory scheme pursuant to a statutory directive to do so are entitled to deference as long as they are consistent with the statute and provide a reasonable interpretation of it. *Doe v. United States*, 372 F.3d 1347, 1362 (Fed.Cir. 2004) (holding that, where Congress had not spoken directly on issue and agency was responsible for "filling a gap in the statute," agency interpretation "based on ... permissible construction of ... statute" was entitled to deference) (internal quotations omitted); *Am. Airlines*, 68 Fed.Cl. at 730, 732 (holding that court must afford deference to reasonable agency interpretation of statute where "Congress has authorized the agency to promulgate rules carrying the force of law") (citing *Mead*, 533 U.S. at 226–27, 121 S.Ct. 2164); *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (holding that, where a statute is silent or ambiguous on an issue, court must defer to reasonable agency interpretation). As with any interpretation of plain language, the court is directed to consider the context of the language and to understand the law as a "harmonious whole." 2A Singer § 46:05, at 154 (stating that "each part or section [of a statute] should be construed in connection with every other part or section [of it] so as to produce a harmonious whole"); *id.* at 156 (stating that a statute should be considered in the context of "the entire legislative scheme of which it is a part").

**B. Whether 5 U.S.C. § 5545 and 5 U.S.C. § 5343 Mandate Payment of Hazardous Duty Pay or Environmental Differential for Exposure to Second-Hand Smoke**

Plaintiffs' claim hinges on whether exposure to second-hand cigarette smoke is a "duty involving unusual physical hardship or hazard ... not usually involved in carrying out the duties of [plaintiffs'] position," 5 U.S.C. § 5545(d), or a "duty involving unusually severe working conditions or unusually severe hazards," 5 U.S.C. § 5343(c)(4), for which an environmental or hazard pay differential is required.

In 2003, both 5 U.S.C. § 5545(d) and 5 U.S.C. § 5343(c)(4) were amended to add exposure to asbestos as a separate category for which the payment of an environmental or hazard differential was required. Pub.L. No. 108–136, 117 Stat. 1392, 1636–37 (codified as amended at 5 U.S.C. §§ 5545(d), 5343(c)(4) (Supp. III 2003)). Congress directed the Office of Personnel Management (OPM) to add the category to the regulations, which OPM did. Congress did not, however, add a category mandating additional payment for exposure to cigarette smoke.

In both the statutes at issue, Congress has directed OPM to promulgate regulations defining compensable categories of "duty involving unusual physical hardship or hazard," 5 U.S.C. § 5545(d), and "duty involving unusually severe working conditions or unusually severe hazards," 5 U.S.C. § 5343(c)(4). The categories defined as compensable by OPM clarify the meaning of the statutory

language. Because the categories defined by OPM are not inconsistent with the language of the statute,[4] plaintiffs' claims must be evaluated against the regulations. Plaintiffs have argued that exposure to second-hand smoke falls within the plain meaning of the statutory language. Pls.' Am. Compl. ¶ 34. To determine whether exposure to second-hand cigarette smoke could be construed as an "unusual physical hazard or hardship" or an "unusually severe working condition[ ] or hazard[ ]," the court must evaluate plaintiffs' claims against the categories as defined by the regulations.

## 1. 5 U.S.C. § 5545(d)

### a. Statutory Language

■ The court begins its analysis with an interpretation of the statutory language. Section 5545(d) directs the Office of Personnel Management (OPM) to establish "a schedule or schedules of pay differentials for duty involving unusual physical hardship or hazard ...." Section 5545(d). Section 5545(d) further provides that a General Schedule employee is "entitled to be paid the appropriate differential for any period in which he is subjected to physical hardship or

hazard not usually involved in carrying out the duties of his position" and which has not been taken into account in the classification of his position. *Id.* The foregoing provisions appear in the statute as indicated:

> The Office [of Personnel Management] shall establish *a schedule or schedules of pay differentials for duty involving unusual physical hardship or hazard ....* *[A]n employee* to whom [this subsection] applies *is entitled to be paid the appropriate differential for any period in which he is subjected to physical hardship or hazard not usually involved in carrying out the duties of his position.* However, the pay differential-(1) does not apply to an employee in a position the classification of which takes into account the degree of physical hardship or hazard involved in the performance of the duties thereof, except in such circumstances as the Office may by regulation prescribe ....

5 U.S.C. § 5545(d) (emphasis added). Plaintiffs argue that exposure to second-hand smoke is an unusual hazard or unusual physical hardship because guards at prisons are not usually expected to be exposed to second-hand smoke when performing the duties of

---

**4.** Plaintiffs do not argue that the categories defined in the regulations are inconsistent with the statute, and the court, in its independent review of the regulations and the statute, discerns no inconsistency. If recourse to the legislative history were required in this case, which the court does not believe it to be, the court notes that the legislative history also supports the categories defined by OPM as compensable. *E.g., Hazardous Duty Pay: Hearing on H.R. 1159 and H.R. 2478 Before the Committee on Post Office and Civil Service,* 88th Cong. 7 (1963) (statement of John W. Macy, Jr., Chairman, U.S. Civil Service Comm'n) (recognizing that H.R. 1159 would "restrict[ ]" "premium payments" "to only the most deserving situations, that is, those involving exposure to 'unusual' physical hardships and hazards"); *id.* at 13 (statement of Rep. Charles Mathias, Jr.) (recognizing that H.R. 1159 would extend hazard pay to "Federal employees who willingly accept the uncertainties and perils incident to especially hazardous work assignments undertaken in the line of duty," that such pay would "provide[ ]" "incentive" to take on those assignments, and that coverage is limited to "extraordinary dangerous work assignments"); *id.* at 11 (statement of Rep. George M. Wallhauser) (indicating that the purpose of the bill is to

"close the gap" by providing compensation to employees covered by the Classification Act of 1949 for the same hazardous work as those employees who were already entitled to hazard pay for the same assignments); *see also id.* at 14 (statement of Vaux Owen, President, Nat'l Fed'n of Fed. Employees), "by authorizing additional remuneration to employees asked to take unusual risks normally not associated with the performance of the[ ] duties of their position and for which added compensation is not otherwise provided"; *id.* at 12 (statement of Rep. George M. Wallhauser) ("visualiz[ing] th[e] bill as covering assignments such as those requiring ... participation in hurricane weather flights, participation in test flights of aircraft during their development period ..., participation in trial runs of newly built submarines ..., and performance of work at extreme heights under adverse conditions"). The court notes that H.R. 1159 of the 88th Congress is "identical" to H.R. 1535 of the 89th Congress, which was signed into law as 80 Stat. 318. H.R.Rep. No. 89–31, at 1 (1965) ("H.R. 1535 is ... identical to H.R. 1159 of the 88th Congress which passed the House on the Consent Calendar on April 22, 1963.")

72

their position. Pls.' Surreply at 9–10. Defendant argues that exposure to second-hand smoke is not unusual in that it is encountered regularly at places of public accommodation and private residences. Def.'s Mot. at 11.

The *American Heritage Dictionary* defines "unusual" as "not usual, common, or ordinary," *The American Heritage Dictionary of the English Language* 1888 (4th ed. 2000) (AHD), and "usual" as "commonly encountered, experienced, or observed," *id.* at 1895. In the context of the phrase "unusual ... hazard" or "unusual physical hardship," the placement of the word "unusual" indicates that it limits the coverage of the statute to those hazards or hardships that are "unusual." Because exposure to second-hand smoke remains "commonly encountered" in enclosed public accommodations, such as bars and restaurants, and certainly would have been "commonly encountered" in 1966, the year of enactment of 5 U.S.C. § 5545(d), the plain meaning of the words "unusual ... hazard" or "unusual physical hardship" favors defendant's interpretation.

The statutory language cannot be construed without reference to the regulations, however, because Congress directed OPM to define categories of "dut[ies] involving unusual physical hardship or hazard." Effectively, Congress instructed OPM to define a comprehensive list of compensable categories. *See* 5 U.S.C. § 5545(d). The statutory language does not explicitly state that it either does or does not include exposure to second-hand smoke within its ambit. *See id.* To the extent that the statutory language "unusual physical hardship or hazard" is ambiguous as to its coverage of exposure to second-hand smoke, the court evaluates plaintiffs' claim under the regulations to determine whether exposure to second-hand smoke is included in the statutory scheme.

### b. Regulations

**(i) Whether, in the Absence of a Specific Category Defining Exposure to Second-Hand Smoke as Compensable, the Category "Toxic Chemical Materials: Work With or In Close Proximity To" Defined By the Regulations May Be Interpreted to Include Exposure to Second-Hand Smoke**

Regulations promulgated pursuant to 5 U.S.C. § 5545(d) do not establish a separate category for exposure to second-hand cigarette smoke. *See* 5 C.F.R. pt. 550, subpt. I, app. A. The issue, therefore, is whether one of the existing categories encompasses exposure to second-hand smoke. Plaintiffs argue that exposure to second-hand smoke could fall under the heading "Exposure to Hazardous Agents, work with or in close proximity to," provided in 5 C.F.R. part 550, subpart I, appendix A. Pls.' Resp. at 28. This category covers "[t]oxic chemical materials when there is a possibility of leakage or spillage." *Id.* Plaintiffs argue that second-hand cigarette smoke falls into that category because it contains toxic chemicals. Pls.' Resp. at 5–6 (citing expert testimony of Jonathan Samet, M.D., presented by the United States in the suit brought against tobacco company Philip Morris). Defendant concedes that second-hand smoke contains toxic chemicals, Def.'s Reply at 4, but argues that second-hand smoke does not fall into the "toxic chemical materials" category, 5 C.F.R. pt. 550, subpt. I, app. A, because, among other things, there is not a "possibility," *id.*, of leakage or spillage as required by the plain language of the regulations, Def.'s Mot. at 12–13; Def.'s Reply at 9.[5]

Defendant argues that the word "possibility" connotes a potential occurrence of an event or risk of an accident and that this understanding is consistent with the definition of "hazardous duty," requiring the risk of accident, contained in the regulations.

---

**5.** Defendant further argues that the "[t]oxic chemical materials" category could not have referred to exposure to second-hand smoke because the original version of the category was issued in 1969, at a time before the government had recognized second-hand smoke to be a health hazard. Def.'s Mot. at 14 (arguing that "[i]t is implausible that OPM considered second-

hand tobacco smoke to be a 'toxic chemical material' when OPM [first] issued Appendix A in 1969"). Although the court finds this argument persuasive, the court relies on the plain meaning of the words, analyzed in the body of the opinion, rather than the historical background of the category, to determine that exposure to second-hand smoke is excluded from coverage.

Def.'s Mot. at 12–13. Defendant argues that the fact that the category is labeled "Exposure to *Hazardous* Agents" (emphasis added) indicates that the compensable duty must be consistent with the definition of "hazardous duty," which requires the risk of an accident. *See id.* at 12. Defendant's argument that plaintiffs' exposure is not the result of an "accident" but rather is "completely within human control,"[6] *id.* at 11, suggests that, in the case of exposure to second-hand smoke, there is not just a possibility of leakage or spillage, but that the occurrence is definite, *id.*[7]

Plaintiffs argue that "exposure to [second-hand smoke] constitutes exposure to a 'toxic chemical material capable of leakage or spillage.'" Pls.' Resp. at 22. Plaintiffs misquote the regulation by substituting the word "capable" for the phrase "when there is a possibility." *Id.* Plaintiffs assert that "leakage or spillage" is not only "possible," but that it occurred in plaintiffs' case. *Id.* ("[G]eneral Schedule [p]laintiffs were faced constantly with exposure and the possibility of exposure.") Plaintiffs allege that both the "possibility of exposure" and exposure itself occurred in this case. *Id.;* Pls.' Surreply at 14 ("[Plaintiffs'] exposure to toxic [second-hand smoke] is a daily occurrence that is inevitably encountered in performing their job duties.").

The *AHD* defines "possibility" as "the fact or state of being possible" or "something that is possible." *AHD* at 1370. The *AHD* defines "possible" as "capable of happening, existing, or being true without contradicting proven facts, laws or circumstances," "capable of occurring or being done without offense to character, nature, or custom," "capable of favorable development; potential," or "of uncertain likelihood." *Id.* These defini-

tions have in common the characteristic that the "possible" occurrence is capable of happening but not certain to happen. By contrast, the exposure plaintiffs allege is not merely "possible" but definite. Pls.' Am. Compl. ¶ 15 ("[P]laintiffs ... were subjected to second-hand smoke on a daily basis."); Pls.' Resp. at 22 ("[G]eneral Schedule [p]laintiffs were faced constantly with exposure and the possibility of exposure."); Pls.' Surreply at 14 ("[Plaintiffs'] exposure to toxic [second-hand smoke] is a daily occurrence that is inevitably encountered in performing their job duties."). The plain language of the definition of the category "toxic chemical materials" favors defendant's interpretation excluding second-hand smoke.

(ii) Whether Other Categories Defined by the Regulations Tend to Indicate That the Category "Toxic Chemical Materials" Should Be Interpreted Not to Include Exposure to Second–Hand Smoke

Defendant also argues that the shared characteristics of the other categories identified by OPM as mandating compensation—those characteristics that make the categories "hazardous"—lends support to its interpretation that exposure to second-hand smoke is excluded from the statutory scheme. Def.'s Reply at 9 ("Likewise, every one of the many categories of pay differential in OPM's schedule involves the performance of duties that are hazardous because of the risks of accidents."). Specifically, defendant asserts that the other categories involve performance of assigned duties,[8] *id.* at 10, which are inherently hazardous, *id.; see id.* at 8, and that those duties are inherently hazard-

---

6. Defendant argues that exposure to second-hand smoke is not compensable because it is unlike the other hazards whose shared characteristics include that the hazard they pose "cannot ever be eliminated no matter what precautions are taken" because "[t]hese activities involve forces that are unpredictable and difficult to control." Def.'s Mot. at 10–11.

7. Plaintiffs allege exposure "through the ventilation system and otherwise." Pls.' Resp. at 22. Accordingly, the act of lighting and smoking a cigarette need not occur in close proximity to an employee.

8. With the exception of asbestos, all categories identified by OPM identify duties that would be assigned to an employee. As discussed below, an analogy to asbestos does not aid plaintiffs' cause because the category was added specifically by statutory amendment; accordingly, Congress's failure to add exposure to second-hand smoke as its own category reveals Congress's intent not to include such exposure under the statutory scheme.

ous because of the risk of accidents, *id.* at 9, all characteristics that go to the very nature of the categories as "hazardous" and that exposure to second-hand smoke lacks. Defendant asserts that, although "the risk of an accident can be reduced" in the other categories defined by OPM, that risk cannot be "eliminated," Def.'s Reply at 9, 10, because the categories identified as compensable have in common that they "involve forces that are unpredictable and difficult to control," Def.'s Mot. at 10–11. In addition to posing the risk of accident, for every category, the occurrence of an accident poses a risk of immediate harm, and, for every category, it is the accident that is the cause of the harm. *See id.* at 11. Plaintiffs argue that, for all the categories listed under the heading "Exposure to Hazardous Agents," the hazard could be removed "by removing the item causing the hazard," and that exposure to second-hand smoke is the same in this respect. Pls.' Resp. at 28. Although plaintiffs do not argue that exposure to second-hand smoke is an assigned duty,[9] plaintiffs do argue that "their job duties necessarily require them to endure exposure to [second-hand smoke] in performing their job duties." Pls.' Surreply at 14. What plaintiffs' argument fails to take into account, however, is that all the other categories are similar in that the assigned duty requires a risk of exposure to the hazard. *See* 5 C.F.R. pt. 550, subpt. I, app. A. In the case of second-hand smoke, exposure could be eliminated without preventing plaintiffs from performing their jobs. However, that is not the case with respect to the hazards described in the categories defined by OPM. *See id.* Because all the other categories that plaintiffs attempt to analogize to second-hand smoke pose a hazard based on the risk of an accident which would cause

immediate serious injury or death, plaintiffs' interpretation does not persuade.

In addition to "Exposure to Hazardous Agents," other category headings include "Exposure to Hazardous Weather or Terrain"; "Exposure to Physiological Hazards"; "Participating in Liquid Missile Propulsion Tests and Certain Solid Propulsion Operations"; "Working in Fuel Storage Tanks"; "Firefighting"; "Work in Open Trenches"; "Underground Work"; and "Underwater Duty." 5 C.F.R. pt. 550, subpt. I, app. A. Under the heading "Exposure to Hazardous Agents," under which exposure to "[t]oxic chemical materials" falls, other "hazardous duties" include exposure to "explosive or incendiary materials," defined as "materials which are unstable or highly sensitive"; "[a]t-sea shock and vibration tests"; and exposure to "virulent biologicals." *See id.* As defendant correctly states, all these categories share the defining characteristics of involving assigned duties,[10] the performance of which are inherently hazardous because of the risk of an accident which would have an immediate negative effect as opposed to an effect over the long term. Although two of the categories seem to pose less severe and immediate hazards, *see id.,* one of them, conducting "fire retardant material tests" involves an assigned duty which creates the hazard and the other, exposure to asbestos, was added by a recent statutory amendment which explicitly identified exposure to asbestos as a separate category, *see* Pub.L. No. 108–136, 117 Stat. at 1636–37. Because exposure to cigarette smoke is not like the other categories, which compensate the individual employee for an assigned duty which involves the risk of an accident that would cause immediate harm, and because the dangers of exposure to cigarette smoke were

9. Plaintiffs argue that the plain language of the definition of the category "[t]oxic chemical materials," which definition provides "working with or in close proximity to poisons …," shows that "working with the toxic chemical" "[is] not require[d to be] the assigned duty." Pls.' Surreply at 10; *cf. id.* at 14 (arguing that work with the toxic chemical need not be the assigned duty in the context of 5 U.S.C. § 5343(c)(4) and accompanying regulations). The court finds more persuasive defendant's argument that the other categories do describe assigned duties. This understanding informs the court's interpretation.

10. The regulations also support defendant's interpretation. Section 550.904(a) states that a hazard differential is payable when "an employee is assigned and performs any duty specified in appendix A." 5 C.F.R. § 550.904(a). Thus, OPM appears to limit the duties for which hazard pay is available to those duties an employee was specifically "assigned" to perform and which appear in the categories provided in appendix A.

well known to Congress in 2003 when it amended the statutes, Pub.L. No. 108–136, 117 Stat. at 1636–37, but did not add exposure to second-hand smoke as a compensable category, plaintiffs' exposure does not fall under the compensable category of "[t]oxic chemical materials" as defined by the regulations.

Taken together, the plain language of 5 U.S.C. § 5545 and the plain language of 5 C.F.R. part 550, subpart I, appendix A indicate that the statutory scheme does not cover exposure to second-hand smoke. The court turns now to an evaluation of plaintiffs' claim under 5 U.S.C. § 5343.

### 2. 5 U.S.C. § 5343

#### a. Statutory Language

■ The court begins its analysis of plaintiffs' claim under 5 U.S.C. § 5343 with an interpretation of the statutory language. Section 5343(c)(4) directs the Office of Personnel Management to establish "proper differentials [applicable to prevailing rate employees], as determined by the Office, for duty involving unusually severe working conditions or unusually severe hazards ...." 5 U.S.C. § 5343(c)(4); *see* 5 U.S.C. § 5343(a) (describing statute as applicable to prevailing rate employees). The foregoing provision appears in the statute as indicated:

(c) *The Office of Personnel Management, by regulation, shall prescribe* practices and procedures for ... developing and establishing wage schedules and rates .... The regulations shall provide—

....

(4) for *proper differentials, as determined by the Office, for duty involving unusually severe working conditions or unusually severe hazards* ....

5 U.S.C. § 5343(c)(4) (emphasis added). Plaintiffs assert that "[their] exposure to second-hand smoke constitutes exposure ... for which a hazard pay differential is required under 5 U.S.C. § 5343." Pls.' Am. Compl. ¶ 35. They contend, first, that exposure to second-hand smoke is a "hazard" and, second, that it is "unusual" because prison guards do not typically expect to be exposed to second-hand smoke as a necessary part of carrying out their assigned duties. Pls.' Sur-

reply at 10 ("Exposure to [second-hand smoke] is not a hazard or physical hardship that is an ordinary or expected hazard to be encountered in performing [p]laintiffs' routine job duties. [P]laintiffs' exposure to [second-hand smoke] is 'unusual' in that it is not ... expected ...."). Defendant does not dispute that exposure to second-hand smoke constitutes a "hazard," Def.'s Reply at 4; defendant argues, however, that exposure to second-hand smoke is not "unusually severe" because it is regularly encountered in public accommodations and private residences, Def.'s Mot. at 19.

The *AHD* defines "severe" as "[c]ausing great discomfort, damage, or distress" and as "[v]ery dangerous or harmful; grave or grievous," *AHD* at 1594. The word "unusual" is defined as "not usual, common, or ordinary," *id.* at 1895, and the word "usual" is defined as "commonly encountered, experienced, or observed," *id.* at 1895. The word "unusually" modifying "severe," therefore, describes a condition that is uncommonly dangerous or harmful-one that is especially or remarkably so. The placement of the words "unusually severe" limit the word "working condition or hazard"; an unusually severe working condition or hazard, then, is not just a hazard, but one that is especially dangerous and not commonly encountered. Because exposure to second-hand smoke remains a regular occurrence in places of public accommodation and private residences, it cannot be understood to be an "unusually severe working condition or ... hazard." It is noteworthy that Congress employed stronger language in 5 U.S.C. § 5343(c)(4) to define compensable duties-"unusually severe working conditions or unusually severe hazards"-than it used to describe duties that merit hazard pay differentials under 5 U.S.C. § 5545(d)-"duty involving unusual physical hardship or hazard," further described as "physical hardship or hazard not usually involved in carrying out the duties of his position." The conclusion, therefore, that exposure to second-hand smoke is not "unusual" within the meaning of 5 U.S.C. § 5545(d) applies with even greater force to exclude second-hand smoke from coverage under 5 U.S.C. § 5343(c)(4). Exposure to second-hand smoke is neither "unusual" nor "unusually severe." The plain language of the stat-

ute excludes exposure to second-hand smoke from its coverage.

The statutory language cannot be construed without reference to the regulations, however, because Congress directed OPM to define categories of "duty involving unusually severe working conditions or unusually severe hazards" for which prevailing rate employees would be entitled to an environmental differential. 5 U.S.C. § 5343(c)(4). Although the statutory language itself appears to the court to exclude exposure to second-hand smoke from its coverage, the statute does not explicitly state either that the statute does or does not cover exposure to second-hand smoke. To the extent that the statutory language is ambiguous as to its coverage of exposure to second-hand smoke, the court evaluates plaintiffs' claim under the regulations to determine whether exposure to second-hand smoke is included in the statutory scheme.

### b. Regulations

Although Congress established the payment of a differential for "duty involving unusually severe working conditions or unusually severe hazards," it left it up to OPM to define the duties entitling prevailing rate employees to compensation. *See* 5 U.S.C. § 5343(c)(4). OPM has not defined a separate compensable category for exposure to second-hand smoke. *See* 5 C.F.R. pt. 532, subpt. E, app. A. Defendant argues that failure to identify such exposure as a separate category is fatal to plaintiffs' claim because the categories defined by OPM are specific, Def.'s Mot. at 8 ("no pay differential covers the specific hazardous duty asserted by plaintiffs"); Def.'s Reply at 3 ("it is clear as a matter of law that OPM has never set any pay differential that includes exposure to second-hand tobacco smoke"); *cf.* Def.'s Mot. at 13–14 ("OPM has not identified 'tobacco smoke' as a 'hazardous agent' that merits a pay differential [under Section 5545] if an employee is exposed to it"), and because the category most analogous to exposure to second-hand smoke is exposure to asbestos which was included by statutory amendment, *see* Def.'s Mot. at 14–15 (arguing that OPM has added new categories in the past and "could have added a new category to cover [exposure to] second-hand tobacco smoke" but has heretofore declined to do so).

The fact that exposure to second-hand smoke is not enumerated as a separate category further undermines plaintiffs' claim. In general, where categories to which the statute applies are listed in the statute or a regulatory scheme, "all [items] not stated are excluded." *Champagne v. United States,* 35 Fed.Cl. 198, 208–09 (1996) ("[W]here a statute states what a term 'means' then all other meanings not stated are excluded."); *see* 2A Singer § 47:23, at 304–07 (recognizing the maxim "expressio unius est exclusio alterius," meaning "where ... the persons and things to which [the statute] refers are designated, there is an inference that all omissions should be understood as exclusions," as a canon of statutory construction).[11] This is especially pertinent here because the category most closely analogous to exposure to second-hand smoke, that is, the category compensating prevailing wage employees for exposure to asbestos, was added by statutory amendment in 2003. Pub.L. No. 108–136,

---

11. The categories enumerated in the regulations are divided into two types: "[p]ayment for [a]ctual [e]xposure" and "[p]ayment on [b]asis of [h]ours in [p]ay [s]tatus." 5 C.F.R. pt. 532, subpt. E, app. A. Within each type, the categories are quite specific. The categories contained under the "[p]ayment for [a]ctual [e]xposure" type are as follows: "[f]lying"; "[h]igh work"; "[f]loating targets"; "[d]irty work"; "[c]old work"; "[h]ot work"; "[w]elding preheated metals"; "[m]icro-soldering or wire welding and assembly"; "[e]xposure to hazardous weather or terrain"; "[u]nshored work"; "[g]round work beneath hovering helicopter"; "[h]azardous boarding or leaving of surface craft"; "[c]argo handling during lightering [sic] operations"; "[d]uty aboard surface craft"; "[w]ork at extreme heights"; "[f]ibrous [g]lass [w]ork"; "[h]igh [v]oltage [e]lectrical [e]nergy"; and "[w]elding, [c]utting or [b]urning in [c]onfined [s]paces." *Id.* The categories contained under the "[p]ayment on [b]asis of [h]ours in [p]ay [s]tatus" type are as follows: "[d]uty aboard submerged vessel"; "[e]xplosives and incendiary material-high degree hazard"; "[e]xplosives and incendiary material-low degree hazard"; "[p]oisons (toxic chemicals)-high degree hazard"; "[p]oisons (toxic chemicals)-low egress hazard"; "[m]icro-organisms-high degree hazard"; "[m]icro-organisms-low degree hazard"; "[p]ressure chamber and centrifugal stress"; "[w]ork in fuel storage tanks"; "[f]irefighting"; "[e]xperimental landing/recovery equipment tests"; "[l]and impact or pad abort of space vehicle"; "[m]ass explosives and/or incendiary material"; "[d]uty aboard aircraft carrier"; "[p]articipating in mis-

117 Stat. at 1636. "Congress is presumed to be aware of an administrative or judicial interpretation" when it amends a statute. *Champagne,* 35 Fed.Cl. at 209. Because Congress made a very specific amendment adding only asbestos to the statutory scheme without changing the rest of the statute, Congress effectively sanctioned the coverage of the statute as established by the categories defined by the regulations prior to amendment. *See id.* ("Congress is presumed to be aware of an administrative or judicial interpretation when it re-enacts a statute and to adopt that interpretation when it re-enacts a statute without change.") (internal quotations and citation omitted). In addition, the dangers of exposure to and the toxic nature of second-hand smoke were known at the time of the most recent statutory amendment. *See, e.g., Environmental Tobacco Smoke (Part 2): Hearings on H.R. 3434 Before the Subcomm. on Health and the Env't of the H. Comm. on Energy and Commerce,* 103rd Cong. 131 (1994) (statement of Joycelyn Elders, Surgeon Gen.) ("In January 1993, [second-hand smoke] joined asbestos, benzene, and vinyl chloride as a 'Group A' carcinogen. These are carcinogens *for which no safe level of exposure has been established.*"). The 2003 amendment provided, in effect, a congressional stamp of approval to the then-existing categories plus asbestos as constituting the list of compensable categories. *See Champagne,* 35 Fed.Cl. at 209. The fact that exposure to second-hand smoke is not expressly included, then, supports defendant's interpretation that exposure to second-hand smoke is excluded from coverage.

(i) Whether, in the Absence of a Specific Category Defining Exposure to Second–Hand Smoke as Compensable, the Category "Poisons (toxic chemicals)-high degree hazard" or, Alternatively, the Category "Poisons (toxic chemicals)-low egress [sic] hazard" Defined by the Regulations May Be Interpreted to Include Exposure to Second–Hand Smoke

Regulations promulgated pursuant to 5 U.S.C. § 5343 fail to identify a separate com-

pensable category for exposure to second-hand smoke. *See* 5 C.F.R. pt. 532, subpt. E, app. A. Nevertheless, plaintiffs argue that exposure to second-hand smoke is compensable under either the category "Poisons (toxic chemicals)-high degree hazard" or the category "Poisons (toxic chemicals)-low egress hazard." Pls.' Resp. at 32. In support of their contention, plaintiffs assert that "exposure to [second-hand smoke] is an exposure to toxic chemicals," *id.* at 33, and that plaintiffs work "*in close proximity to* poisons (toxic chemicals)," Pls.' Surreply at 13. Plaintiffs further argue that "[t]he plain language indicates that working with a poison (toxic chemical) need not be the assigned duty in order to require an environmental differential, so long as the duty requires an employee to come 'in close proximity to' a poison (toxic chemical)." Pls.' Surreply at 13.

Defendant does not dispute that second-hand smoke contains toxic chemicals. Def.'s Reply at 4. Defendant argues, however, that, "by its plain terms, the category is limited to injuries suffered from accidental exposure to toxic chemicals whose risks cannot be eliminated by the use of protective devices or safety measures." Def.'s Reply at 14. Defendant also looks to the examples contained within the category and concludes that "working with toxic chemicals is itself the assigned duty that merits payment of an environmental differential." *Id.*

The first category that plaintiffs claim to cover exposure to second-hand smoke, "Poisons (toxic chemicals)-high degree hazard," Pls.' Resp. at 32 (citing 5 C.F.R. pt. 532, subpt. E, app. A), is defined in the regulations as

> working with or in close proximity to poisons (toxic chemicals), other than tear gas or similar irritants, which involves potential serious personal injury such as permanent or temporary, partial or complete loss of faculties and/or loss of life, including

sile liquid propulsion or solid propulsion situations"; "[a]sbestos"; and "[w]orking at high altitudes." *Id.*

exposure of an unusual degree to toxic chemicals, dust, or fumes of equal toxicity generated in work situations by processes required to perform work assignments wherein protective devices and/or safety measures have been developed but have not practically eliminated the potential for such personal injury.

5 C.F.R. pt. 532, subpt. E., app. A.

The plain language of the definition describing the injury that may result indicates that the injury is contemplated to be "immediate" rather than a long-term, cumulative one. *See* 5 C.F.R. pt. 532, subpt. E, app. A; *cf.* Def.'s Mot. at 17 (arguing that injuries resulting from exposure to "high degree hazard" toxic chemicals are contemplated by the regulations to be "immediate," as evidenced by the examples that follow the definition of the category). In particular, the plain language describing the injury as "permanent or temporary, partial or complete loss of faculties," 5 C.F.R. pt. 532, subpt. E, app. A, appears to the court to anticipate an injury that would be immediate in onset, although of possibly limited duration, a "temporary ... loss of faculties," for example. While the court finds that the plain language favors an interpretation excluding plaintiffs' claim from coverage, to the extent that the language could be viewed as ambiguous, the court considers the further description contained within the definition and the examples provided.

The definition of the category "Poisons (toxic chemicals)-high degree hazard" itself contains an example further describing the category. The example appears in the definition of the category as indicated:

working with or in close proximity to poisons (toxic chemicals), other than tear gas or similar irritants, which involves potential serious personal injury such as permanent or temporary, partial or complete loss of faculties and/or loss of life, *including exposure of an unusual degree to toxic chemicals, dust, or fumes of equal toxicity generated in work situations by processes required to perform work assignments wherein protective devices and/or safety measures have been developed but have*

*not practically eliminated the potential for such personal injury.*

5 C.F.R. pt. 532, subpt. E., app. A (emphasis added). Defendant argues that this example limits the definition of the category. Def.'s Mot. at 17. Specifically, defendant asserts that protective devices must not be able to eliminate the potential for such personal injury. *Id.* Defendant argues that "exposure to second-hand tobacco smoke [is excluded] from the category, because a safety measure has been developed that eliminates the potential for injury: prohibiting tobacco smoking in the workplace." *Id.* Plaintiffs argue that use of the language "including" indicates that the description following the word provides an example of what is included in the category but does not exclude other hazards not listed. Pls.' Surreply at 12.

The example clause cannot definitively be construed as limiting the category because the clause-in particular, the use of the word "including"-may suggest that the clause is meant only to describe certain exposures of a type falling within the "high degree hazard" category without exhausting the category. *See Skillo,* 68 Fed.Cl. at 745 (discussing possible interpretations of the word "include" and noting that "*[i]nclude* does not rule out the possibility of a complete listing" (quoting *AHD* at 887)). Nevertheless, the clause informs the court's interpretation of the category by further describing the contemplated nature of the toxic chemicals and the circumstances surrounding work with them. The example describes "*exposure of an unusual degree ... generated in work situations by processes required to perform work assignments.*" 5 C.F.R. pt. 532, subpt. E, app. A (emphasis added). The example further describes a situation "*wherein protective devices and/or safety measures have been developed but have not practically eliminated the potential for such personal injury.*" *Id.* (emphasis added). Plaintiffs do not allege "exposure of an unusual degree" to second-hand smoke. *See* Pls.' Am. Compl. ¶¶ 12, 15, 36. In addition, plaintiffs' alleged exposure is not "generated ... by *processes* required to perform work assignments." *See* Def.'s Reply at 14 (arguing that "in every one of the examples that OPM provides in its schedule, working with toxic chemicals is itself the

assigned duty"). Moreover, in the case of second-hand smoke, "protective devices and/or safety measures"-short of ending smoking altogether-have not been developed to eliminate the potential for injury resulting from exposure to it. The plain meaning of the words "protective devices and/or safety measures" in the phrase *"wherein protective devices and/or safety measures have been developed but have not practically eliminated the potential for such personal injury"* is a protective device or safety measure that limits or mitigates the effect of exposure to the toxin while allowing employees to continue to work with that toxic substance. Plaintiffs do not allege, however, that a protective device or safety measure exists that mitigates the effect of second-hand smoke. On the contrary, plaintiffs state that "the only way to eliminate the dangers of [exposure to second-hand smoke] is to prevent it." Pls.' Resp. at 26. Eliminating the toxic substance from the work environment altogether is simply not the kind of "protective device" or "safety measure" contemplated by the regulations. Accordingly, plaintiffs' exposure is not one of the types of "[p]oisons (toxic chemicals)-high degree hazard" contemplated by the regulations.

The court next considers the examples provided by OPM to illustrate the meaning of the category "Poisons (toxic chemicals)-high degree hazard." The examples provided include "handling and storing toxic chemical agents ...; examining materials for signs of leakage or deteriorated material; decontaminating equipment and work sites ..."; "[m]odification of toxic chemicals [and] guided missiles ..."; "operating ... chemical engineering equipment in a restricted area such as [equipment] utilized in the development, manufacturing, and processing of toxic or experimental warfare agents"; "demilitarizing and neutralizing toxic chemical munitions and ... agents"; "handling or working with toxic chemicals ..."; "preparing ... reagents, ... injecting laboratory animals with compounds having toxic, incapacitating

or other effects"; "recording analytical and biological test results where subject to above types of exposure"; "visually examining chemical agents to ... detect leaks in storage containers"; "transferring chemical agents between containers"; and "salvaging and exposing chemical agents." 5 C.F.R. pt. 532, subpt. E, app. A. Plaintiffs argue that the examples provided are merely illustrative and do not limit the meaning of the category. Pls.' Resp. at 34–35 (arguing that examples not intended to exclude "other exposures which fit within the circumstances described in the categories at issue"). Defendant argues that the examples illustrate the nature of the work with toxic chemicals covered by the category. Def.'s Reply at 14. In particular, defendant argues that "in every one of the examples that OPM provides in its schedule, working with toxic chemicals is itself the assigned duty that merits payment of an environmental differential." *Id.*; Def.'s Mot. at 17–18.

The court finds defendant's argument persuasive. Although the examples are illustrative, they indicate the kinds of work contemplated under the "high degree hazard toxics" category as meriting the payment of an environmental differential.[12] The court agrees with defendant that the nature of the work in every example requires some sort of manipulation of the toxic materials themselves; it is quite literally work *"with"* them. Def.'s Reply at 14–15. In addition, the "work" in each example would pose a threat to the employee of exposure to the toxic chemical that could cause immediate serious injury or death. *See* 5 C.F.R. pt. 532, subpt. E, app. A ("Poisons (toxic chemicals)"). Because the kind of work contemplated by OPM to establish eligibility under this category is assigned work with toxic chemicals, the court concludes that exposure to second-hand smoke is excluded from coverage under this category.

The court next turns to an evaluation of the second category under which plaintiffs claim coverage: "Poisons (toxic chemicals)-low egress hazard." 5 C.F.R. pt. 532, subpt.

12. Although the list of examples provided is not exhaustive, and so in that way does not limit what specific duties are compensable under the "high degree hazard toxics" category, it does illustrate the kinds of duties OPM intended to be compensable under that category. In an effort to discern the reach of the category at issue, therefore, the court gleans from the examples the common characteristics of duties categorized as "hazardous."

E, app. A. The first part of this two-part category compensates employees for "work[ ] with or in close proximity to poisons (toxic chemicals other than tear gas or similar irritating substances) in situations for which the nature of the work does not require the individual to be in as direct contact with, or exposure to, the more toxic agents as in the case with the work described under high hazard for this class of hazardous agents." *Id.* The second part of the category contains an additional requirement: "wherein protective devices and/or safety measures have not practically eliminated the potential for personal injury." *Id.* Because the second part merely adds a requirement, the court notes that, if plaintiffs' exposure fails to satisfy the requirements of the first part of the category, the court need not consider the additional requirement provided by the second part. Because the court determines that exposure to second-hand smoke is not covered by the more lenient first part of the low egress hazard toxics category, the court declines to consider whether plaintiffs' claim meets the additional requirements contained within the second part.

Plaintiffs claim that if exposure to second-hand smoke is not covered by the high hazard toxic chemicals category, it is at least covered by the low egress hazard category. Pls.' Resp. at 32. Defendant argues that the assigned duty must be the work with chemical agents and the fact that toxins that happen to be in the background does not establish plaintiffs' eligibility. *See* Def.'s Reply at 15. The court finds defendant's argument more persuasive. In particular, the reference in the definition of the low hazard toxics category to "direct contact," 5 C.F.R. pt. 532, subpt. E, app. A, leads the court to conclude that the work contemplated by OPM is work directly with toxic chemical materials as part of an employee's assigned duties and that this category allows compensation for contact with such materials that is somewhat less likely to occur than the contact contemplated by the high degree hazard toxic chemicals category. The category does not appear to contemplate compensation for incidental exposure to toxins in the surrounding atmosphere while employees are performing their assigned duties. *See id.*

The sole example provided to illustrate the "low egress hazard" toxics category supports this interpretation. *See id.* The example describes as compensable "handling for shipping, marking, labeling, hauling and storing loaded containers of toxic chemical agents that have been monitored." *Id.* In a very literal sense, this example provides an illustration of not-quite-direct contact with a chemical agent-because that chemical agent is physically one step removed from the employee by a container. *See id.* The danger posed by such a "hazard" is the potential for contact if the container breaks or otherwise opens or if the toxic chemicals accidentally leak through. Plaintiffs contend that this example is merely illustrative and does not exclude their exposure to second-hand smoke from coverage under this category. *See* Pls.' Resp. at 34-35. However, the court finds that the example describes the nature and characteristics of a situation that would make an employee eligible for compensation. Because, as defendant argues, the telling characteristic of the example provided is that the work with the toxic chemical materials is itself an assigned duty, *see* 5 C.F.R. pt. 532, subpt. E, app. A, exposure to second-hand smoke, which is incidental to and not part and parcel of their assigned duties, is excluded from coverage under this category.

### III. Conclusion

The court concludes that neither 5 U.S.C. § 5545(d) and its accompanying regulations nor 5 U.S.C. § 5343(c)(4) and its accompanying regulations mandate compensation in the form of a hazard pay differential or an environmental differential for exposure to second-hand smoke. Because plaintiffs allege that they are entitled to compensation under Sections 5545(d) and 5343(c)(4) based on their exposure to second-hand smoke, the court must DISMISS plaintiffs' claim for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Accordingly, defendant's motion is GRANTED.

IT IS SO ORDERED.